# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

REVEREND JEREMIAH GITHERE, JOSEPH
SHIKHMAN, AND CHRISTOPHER
MCCORMICK, INDIVIDUALLY AND AS
PUTATIVE CLASS REPRESENTATIVES AND
THOSE SIMILARLY SITUATED,

                              Plaintiffs,

              v.

TELEXELECTRIC, LLLP; TELEX MOBILE,
HOLDINGS, INC.; JAMES M. MERRILL;
CARLOS N. WANZELER; STEVEN M.
LABRIOLA; JOSEPH H. CRAFT, a/k/a JOE H.
CRAFT; CRAFT FINANCIAL SOLUTIONS,
LLC; JOHN MERRILL: CARLOS COSTA;
SANDERLEY RODRIGUES DE
VASCONCELOS; WWW GLOBAL BUSINESS,
INC.; SANTIAGO DE LA ROSA; RANDY N.
CROSBY; FAITH R. SLOAN; GERALD P.
NEHRA, individually and doing business as LAW
OFFICES OF NERHA AND WAAK; GERALD
P. NEHRA ATTORNEY AT LAW, PLLC;
RICHARD W. WAAK, individually and doing
business as LAW OFFICES OF NERHA AND
WAAK; RICHARD W. WAAK, ATTORNEY AT
LAW, PLLC; BANK OF AMERICA
CORPORATION, BANK OF AMERICA, NA;
TD BANK, NA; CITIZENS FINANCIAL
GROUP, INC.; CITIZENS BANK OF
MASSACHUSETTS; FIDELITY CO-
OPERATIVE BANK, doing business as
FIDELITY BANK; MIDDLESEX SAVINGS
BANK; WELLS FARGO & COMPANY; WELLS
FARGO BANK, NA; FMR, LLC, also known as
FIDELITY INVESTMENTS; WADDELL &
REED FINANCIAL, INC.; WADDELL & REED,
INC.; GLOBAL PAYROLL GATEWAY INC.;
INTERNATIONAL PAYOUT SYSTEMS, INC.;
PROPAY, INC., doing business as
PROPAY.COM; BASE COMMERCE, LLC,
doing business as PHOENIX PAYMENTS;
VANTAGE PAYMENTS, LLC;  DOE INSIDER
PROMOTERS 1- 66; DOE PROFESSIONAL
SERVICES PROVIDERS; DOE BANKS; DOE
INVESTMENT SERVICES PROVIDERS; DOE
PAYMENT PROCESSORS; and PARALEGAL
DOE,

                            Defendants.

**CLASS ACTION COMPLAINT
FOR, *INTER ALIA*, VIOLATIONS
OF STATE AND FEDERAL
LAWS INCLUDING THE**

**DEMAND FOR TRIAL BY JURY**

**<u>CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

                                                                                    **Page**

I.   NATURE OF THE ACTION.................................................................... 1

II.  JURISDICTION AND VENUE ........................................................... 5

III. THE PARTIES .........................................................................................7

   **A.** Plaintiffs.............................................................................................7

   **B.** TelexFree Defendants.........................................................................7

      i.   TelexFree Companies ....................................................................7

      ii.  Owners, Officers and Directors and Various Businesses Associated
          With Those Individuals...............................................................8

      iii. Insider Promoters including Insider Promoter Does 1-63............10

      iv.  Attorneys.......................................................................................12

      v.   Certified Public Accountant……….………………………….13

   **C.** Financial Institution and Other Defendants....................……………..14

      i.    Banks …………………………………………..……..14

      ii.   Payment Processors….………………………………………...17

      iii.  Other Defendants…..………………………………………….19

IV.  FACTS AND ALLEGATIONS .....................................................20

   **A.** Securities Defined………………………………………………….20

   **B.** Ponzi Pyramid Schemes…………………………………………….22

   **C.** General Allegations………………………………………………….25

   **D.** Background of Founders and Formation of TelexFree, Inc., f/k/a Common
      Cents, Inc. ………………………………………………………...29

   **E.** Brazilian Help, Disk A Vontade, and Ympactus .......................................29

   **F.** TelexElectric, LLLP's and Telex Mobile Holding, Inc.'s Involvement in the
      Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme .........................31

i

**G.** TelexFree, LLC...................................................................................32

**H.** TelexFree Financial, Inc. ..............................................................33

**I.** Relationship between TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. and Defendants TelexFree Mobile Holding, Inc. and TelexElectric, LLLP's................................................................35

**J.** TelexFree's Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme Involving the unregistered sale of securities ....................................................................................................36

**K.** TelexFree's Offer and Sale of Unregistered Investments in Best Western Hotel.............................................................................45

**L.** Investigation of, and Injunction Against, TelexFree's Brazilian Operations in Brazil was Notice of Scam ..........................................................46

**M.** Collapse of TelexFree's United States' Operations ...................................48

**N.** Events Since TelexFree's Bankruptcy Filing ..............................................50

**O.** TelexFree's Director's Officers and Owners Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme ..........................52

**P.** Other Businesses Associated with TelexFree's Director's Officers and Owners Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme .................................................................57

**Q.** TelexFree's Insider Promoters including Insider Promoter Does 1-66 Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme ......................................................................................57

**R.** TelexFree's Attorneys Aided, Abetted, and Played an Integral Role in the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme ..........................57

**S.** TelexFree's Certified Public Accountant Aided, Abetted, and Played an Integral Role in the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme...................................................................................67

**T.** Banks Providers and Does Knowingly Aided and Abetted TelexFree's Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme and Knowingly Received Fraudulent Fund Transfers ..........................................70

**V.** **CLASS ACTION ALLEGATIONS** ..............................................74

**VI.** **CLAIMS FOR RELIEF** ............................................................77

**A.** **First Claim For Relief** For Violations Of Section 10(b) Of The Securities

And Exchange Act Of 1934 And Securities And Exchange Commission Rule 10b-5 Against Defendant Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues; WWW Global Business, Inc.; De La Rosa; Crosby; Sloan, Doe Insider Promoters, And Others ………..........................................................................................................77

**B.** **Second Claim For Relief** For Violations Of Section 20(A) Of The Securities And Exchange Act 1934 And Section 15 Of The Securities Act Of 1933 Against Direct Participant Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC……………………….…………………………….............81

**C.** **Third Claim For Relief** For Violations Of Sections 5 And 12(A)(L) Of The Securities Act Of 1933 Against Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, And Others……………..…………..…………….....83

**D.** **Fourth Claim For Relief** For Violations Of Section 11 Of The Securities Act Of 1933 Against Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC……………………………………………..……………..85

**E.** **Fifth Claim For Relief** For Violations Of Section 12(A)(2) Of The Securities Act Of 1933 Against The Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, And Others……………………………………...86

**F.** **Sixth Claim For Relief** For Violations Of Massachusetts General Laws, Chapter 110a, Section 410(A) Against Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, And The Doe Insider Promoters…………………………………………………….…………87

**G.** **Seventh Claim For Relief** For Violations Of Massachusetts General Laws, Chapter 110a, Section 410(B) Against Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Law Offices Of Nehra And Waak, Richard W. Waak, Attorney At Law, PLLC And Gerald P. Nehra, Attorney At Law, PLLC, And Others…………………………..….……89

**H.** **Eighth Claim For Relief** For Negligence Against All Defendants.……………………………………………….……...……….91

**I.** **Ninth Claim For Relief** For Violations Of Massachusetts General Laws, Chapter 110a, Section 410(B) Against Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Law Offices of Nehra And Waak, Richard W. Waak, Attorney At Law, PLLC And Gerald P. Nehra, Attorney At Law, PLLC, And Others…………………………….…..91

iii

**J. Tenth Claim For Relief** For Intentional Misrepresentation Against Telexfree Entities, Merill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Law Offices Of Nehra Richard W. Waak, Attorney At Law, PLLC And Waak, Gerald P. Nehra, Attorney At Law, PLLC Rodrigues, De La Rosa, Crosby, And Sloan, Doe Insider Promoters, And Others…………………………………………………………………92

**K. Eleventh Claim For Relief** For Professional Malpractice Against Defendants Craft, Craft Financial, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC…………………..................................................93

**L. Twelfth Claim For Relief for** Breach Of Fiduciary Duty Against Telexfree Entities, Merill, Wanzeler, Labriola, Craft, John Merrill; Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC……………………………………………………………...…95

**M. Thirteenth Claim For Relief** For Breach Of The Covenant Of Good Faith And Fair Dealing Against Telexfree Entities, Merill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC And Others………………………………...97

**N. Fourteenth Claim For Relief** For Unjust Enrichment Against Telexfree Entities, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa Crosby, Sloan, Doe Insider Promoters And Others………………………………………….……………...………99

**O. Fifteenth Claim For Relief** For Fraud Against Telexfree Entities, Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, And Others………………………………………………….……..............99

**P. Sixteenth Claim For Relief** For Aiding And Abetting Fraud Against Defendants Telexelectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Doe Insider Promoters, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC, Richard W. Waak, Attorney At Law, PLLC, Bank Of America, Bank Of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, GPG, IPS, Propay, Base Commerce, Vantage Payments, And The Doe

Defendants…………………….…………………………………………102

**Q.  Seventeenth Claim For Relief** For Common Law Fraudulent Transfer
Against Defendants Telexelectric, Telex Mobile, Merrill, Wanzeler,
Labriola, Craft, Craft Financial, Costa, Bank Of America, Bank Of America,
N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex
Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell &
Reed Financial, Waddell & Reed, GPG, IPS, Propay, Base Commerce,
Vantage Payments, Doe Banks, Doe Payment Processors, Paralegal Doe
And
Others………………………………………………………..…………...104

**R.  Eighteenth Claim For Relief** For Deepening Insolvency Against
Telexelectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft
Financial, John Merrill, Costa, Bank Of America, Bank Of America, N.A.,
TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex
Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell &
Reed Financial, Waddell & Reed, GPG, IPS, Propay, Base Commerce,
Vantage Payments, Doe Banks, Doe Payment Processors, Paralegal Doe
And Others………………………………….…………………………….105

**S.  Nineteenth Claim For Relief** For Civil Conspiracy Against Telexfree
Entities, Telexelectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft,
Craft Financial, John Merrill, Costa, Rodrigues, WWW Global Business,
Inc., De La Rosa, Crosby, Sloan,  Nehra, Waak, Law Offices Of Nehra And
Waak, Gerald P. Nehra, Attorney At Law, PLLC and Richard W. Waak,
Attorney At Law, PLLC, Doe Insider Promoters, And Other
…………………………………………………….…….…………106

**T.  Twentieth Claim For Relief** For Conversion Against Telexfree Entities,
Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Rodrigues, WWW
Global Business, De La Rosa, Crosby, Sloan, Doe Insider Promoters, And
Others……………………………………………………..………..107

**U.  Twenty-First Claim For Relief** For Violations Of Massachusetts General
Laws, Chapter 93a, Section 2 Against Telexfree Entities, Telexelectric,
Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa,
Rodrigues, Www Global Business, Inc., De La Rosa, Crosby, Sloan, Nehra,
Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At
Law, PLLC, Richard W. Waak, Attorney At Law, PLLC, Fidelity Bank,
Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, Gpg, Ips,
Propay, Base Commerce, Vantage Payments, And The Doe Defendants
……………………………………………………………………108

**V.  Twenty-Second Claim For Relief** For Violations Of The Lanham Act,
United States Code, Title 15, Section 1125 Against Telexfree Entities,
Merrill, Wanzeler, Labriola, Craft, Craft Financial, Rodrigues, WWW

Global Business, Inc., De La Rosa, Crosby, Sloan, Costa, Waak, Nehra, Law
Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC,
Richard W. Waak, Attorney At Law, PLLC, And Doe
   Insider Promoters110 …………………………………………………109

**VII.   CONCLUSION …**……………………….………………...………..110

Plaintiffs, Putative Class Representatives Reverend Jeremiah Githere, Joseph Shikhman and Christopher McCormick on behalf of a putative class comprised of themselves and all others similarly situated ("Plaintiffs") bring this class action against individuals and various entities related to various TelexFree operations[1] including Defendants TelexElectric, LLLP and Telex Mobile, Holdings, Inc.[2] and other named and Doe Defendants.

## I.

## NATURE OF THE ACTION

1.　　　　During all times relevant to this complaint, the TelexFree Defendants systematically and uniformly held out "TelexFree Memberships" as the lawful product of a "multi-level marketing" company selling local and international telephone service plans that use "voice over internet protocol" ("VoIP") technology through so-called "Promoters."

2.　　　　However, as detailed detailed herein, the offer and sale of "TelexFree Memberships" was a thoughtfully executed pyramid-type Ponzi scheme (the "Pyramid Ponzi Scheme carried out from offices in Marlborough, Massachusetts.[3]

3.　　　　Since all activities were coordinated and eminated from TelexFree's TelexFree's Marlborough, Massachusetts head quarters, sales office, and administraive office, Massachusetts state law applies.

4.　　　　Plaintiffs seek compensation for ascertainable economic loss sustained because certain Defendants' carried out an unlawful, unfair, and deceptive pyramid Ponzi scheme. Plaintiffs also seek compensation for ascertainable economic loss because certain

---

[1] TelexFree entities are collectively referred to as "TelexFree Entities".

[2] TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. have not been named as defendants in this action. These Defendants have sought bankruptcy protection pursuant to Chapter 11 of the U.S. Bankruptcy Code. The Plaintiffs reserve the right to name these entities as Defendants in the action.

[3] Victims have been located in over twenty states and internationally in over 10 countries.

Defendants' conduct encouraged, aided, abbetted and enabled  TelexFree's unlawful, unfair, and deceptive pyramid Ponzi scheme.

5.      Other claims for relief arising from the defendants conduct are advanced under alternative theories including Intentional Misrepresentation; Professional Malpractice; Breach Of Fiduciary Duty; Breach Of The Covenant Of Good Faith And Fair Dealing; Unjust Enrichment;Fraud; Fraudulent Transfer; Deepening Insolvency; Conversion; and violations of Securities And Exchange Commission Rule 10b-5; Sections 5, 11,12(A)(L), and 15 of the Securities Act of 1933; Section 10(b) and 20(A)  Of The Securities And Exchange Act Of 1934; Section 12(A)(2); Massachusetts General Laws, Chapter 110a, Section 410(A) and Section 410(B); Massachusetts General Laws, Chapter 93a, Section 2; the Racketeer Influenced And Corrupt Organizations Act, United States Code, Title 18, Section 1962;the Lanham Act, United States Code, Title 15, Section 1125.

6.      TelexFree was a fraudulent investment operation. TelexFree's standard form contract and uniform marketing ommitted material facts and misrepresented other material fcats. TelexFree based the returns it promised to pay its investors solely on new capital paid to it by new investors. It did not earn a penny profit from its sale of VOIP product. TelexFree uniformly and through its standaard adds and marketing programs enticed new investors by offering higher returns than any other investments. TelexFree promised short-term returns that were abnormally high and unusually consistent.

7.      The core of the pyramid Ponzi scheme centers on TelexFree's uniform and standard investment increments of $289.00 and $1,375.00.  TelexFree offered no product of value as its VOIP was available for free elsewhere. Moreover, TelexFree's VOIP componnat generated less than one percent of its revenues. and requested its promoters to cut and place

adds.

8.      A TelexFree Promoter ("Promoter") who invests in TelexFree's uniform and standard $289.00 package received one advertisement kit and ten VoIP Programs.  A Promoter who invests in TelexFree's uniform and standard $1,375.00 package received five advertisement kits and fifty VoIP Programs.

9.      A Promoter who initially invested $289.00 and sold no product and otherwise contributed no value, but cut and pasted one add on the Internet per day was promised a profit of at least $681.00. This amounted to a return of over 200 percent.

10.     A Promoter who initially invested $1,375.00 and sold no product and otherwise contributed no value, but cut and paste five advertisements on the Internet per day was promised a profit of at least $3,675.00. This amounted to a return of over 350 percent.

11.     According to the contractually guaranteed compensation plan TelexFree offered its promoters, and conservatively assuming that only 50% of all participant investments between August 2012 and March 2014 were for $1,375.00, TelexFree owes $2,398,897,200.00. That figure eclipses TelexFree's reported total revenues over the same period without taking into account contractually guaranteed bonuses, recruitment commissions, and revenue sharing.

12.     The pyramid Ponzi scheme was also willfully and fraudulently designed and held out as generating further returns for promoters through various bonus structures and membership recruitment commissions.  For example, by recruiting multiple individuals, TelexFree Promoter become eligible for revenue sharing bonuses of up to 3% of the TelexFree's VoIP Program sales.

13.     Defendants concede that:

a.   the TelexFree Multi Level marketing program could not be sustained by

3

sales of TelexFree VOIP alone;

b.  the sale of promoter memberships accounted for over 99 % of Telexfree's income;

c.  TelexFree Promoters were guaranteed compensation in exchange for recruiting other investors to pay the membership fees.

14.    Defendants also concede that between August 2012 and March 2014:

a.  less than one-half of one percent of TelexFree's total revenue came from sales of TelexFree's VOIP;

b.  TelexFree received approximately $1.3 million from the sale of about 26,300 VoIP Programs;

c.  TelexFree promised to pay Promoters returns of over $1.1 billion[4];

d.  TelexFree had 783,771 investments of either $289.00 or $1,375.00 totaling $880,189,455.32.

15.    TelexFree's scheme constitutes an unlawful pyramid scheme in large part because the proceeds from the sale of TelexFree's VoIP products alone could not possibly sustain the massive pay structure. TelexFree did not generate sufficient funds from sales of their phone service to pay the returns on investments that they had contracted to pay.  Instead, the funds TelexFree used to pay the purported returns on investments were the principal investment funds (membership fees) tendered by subsequent TelexFree investors

16.    To keep TelexFree's Pyramid Ponzi Scheme liquid, a constant influx of new participants was required, and, true to a Pyramid Ponzi Scheme, new investments would often pay older investors.

---

[4] $1.1 billion is approximately one thousand times the amount of revenue derived from sales of the VoIP Programs.

17.     TelexFree's pyramid scheme collapsed in Brazil in 2013. On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "a stop to TelexFree's business operations, including the registration of new affiliate investors, acceptance of new investments and paying any returns owed on existing affiliate investments (June 19, 2013 Injunction")."[5]

18.     The response of TelexFree and the other Defendants was to ramp up its United States based pyramid scheme. Despite actual knowledge, or at least a general awareness, of the findings of the Brazilian Court in Acre the aiding and abetting defendants continued to substantially assist and encourage TelexFree's fraud.

19.     Plaintiffs also make the following allegations upon information and belief and the investigation of their counsel, except on their own actions and the facts that are a matter of public record:

## II.

## JURISDICTION AND VENUE

20.     The District Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000.00 exclusive of interest and costs, and there are numerous Defendants who are citizens of states other than Plaintiff Reverend Jeremiah Githere's state of citizenship, which is Massachusetts.

21.     The District Court has original subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. 1331.

22.     The District Court also has jurisdiction over this action under Sections 20(b), 20(d)(l) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b),

---

[5] Brazilian Court Suspends TelexFree's Operations, Behind MLM (June 20, 2013).
http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/.

77t(d)(l) & 77v(a)], Sections 21(d)(l), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(l), 78u(d)(3)(A), 78u(e) and 78aa], Section 1121 of the Lanham Act [15 U.S.C. § 1121].

23.     Venue is also proper under 28 U.S.D. § 1391 since:

   a.  Defendants Merrill, Labriola, John Merrill, Vasconcelos, De La Rosa and certain other Defendants including WWW Global Business, Inc. reside in this district;

   b.  Acts and transactions giving rise to this action occurred in this district[6]; and

   c.  Multiple Defendants are subject to personal jurisdiction in this district[7];

24.     Venue is proper in this district under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.  Defendants transacted business and offered and sold the unregistered securities that are the subject of this action to investors in this district.

25.     Venue is proper under Section 1965 of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1965], as the Defendants reside, have agents, or otherwise transact business material to this Complaint in this district.

---

[6] Beginning on February 15, 2012 through approximately April, 2014, James Merrill, Carlos Wanzeler, Steven Labriola, Carlos Costa, Joseph H. Craft and other Defendants and others identified as Does conducted the unlawful business of TelexFree in Massachusetts. Some Defendants including Inside Promoters and the Doe Inside Promoters continue on with related nefarious activities in Massachusetts including those intended to allow them to continue to profit from the unlawful continuance of successor unlawful pyramid schemes.

[7] On April 13, 2014, related entities TelexFree, LLC, TelexFree, Inc. and TelexFree Financial, Inc. sought bankruptcy protection in Nevada (See United States. Bankruptcy Court, District of Nevada, Case No.: BK-S-14-12524-ABL). On May 6, 2014, The United States Bankruptcy Court, District of Nevada ordered that "all the debtor's [TelexFree's] jointly administered cases are transferred to the U.S. Bankruptcy Court, District of Massachusetts, Central Division.

26.      With respect to the state law claims, this Court has jurisdiction under 28 U.S.C. § 1367 and principles of pendent jurisdiction.

### III.

### THE PARTIES

**A.      Plaintiffs**

27.      Plaintiff Reverend Jeremiah Githere, ("Shik Reverend Githere", "Plaintiff" or Putative Class Representative") is an individual who resides in Massachusetts.  Reverend Githere tendered valid consideration for membership(s) in TelexFree (a "TelexFree Membership") and its promised return in investment and suffered ascertainable economic loss.

28.      Plaintiff Joseph Shikhman ("Shikhman", "Plaintiff" or Putative Class Representative") is an individual who resides in New York.  Shikhman tendered valid consideration for TelexFree Membership(s) and its promised return on investment and suffered ascertainable economic loss.

29.      Plaintiff Christopher McCormick ("McCormick", "Plaintiff" or Putative Class Representative") is an individual who resides in Georgia. McCormick tendered valid consideration for TelexFree Membership(s) and its promised return on investment and suffered ascertainable economic loss.

**B.      TelexFree Defendants**

**i.      TelexFree Companies[8]**

---

[8] Three TelexFree related entities have filed for bankruptcy and are not named. TelexFree, Inc. is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, having a last known principal place of business at 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752. TelexFree, LLC is a limited liability company duly organized and existing under the laws of Nevada, having a purported place of business at 4705 S. Durango Drive, #100-J51 (a post office box in an unnamed Indian bodega), Las Vegas, Nevada 89147.  TelexFree, LLC also

30.     TelexElectric, LLLP ("TelexElectric") is a limited liability limited partnership duly organized and existing under the laws of the State of Nevada, and having its registered agent as BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

31.     Telex Mobile, Holdings, Inc. ("Telex Mobile") is a corporation duly organized and existing under the laws of the State of Nevada.  and having its registered agent as BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

32.     Disc Martix is a d/b/a/ of Defendants James Merrill and Carlos Wanzeler that they operated from their offices in 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752. Merrill and Wanzeler formed Disk Matrix after Brazilian authorities shut down TelexFree Brazil.

33.     Disk A Vontade Telefonia, Ltd., has a last known usual place of business located at 225 Cedar Hill Street, Suite 200, in Marlborough, Massachusetts 01752. Also known as Diskavontade, also known as Disk (sometimes referred to as "Disk A Vontade"), is a Brazilian Limited Liability Company, formerly had its principal offices as Rua Jose Luiz Gabeira, NRO 170, APTO 103 Barro Vermelho.

**ii.     Owners, Officers and Directors and Various Businesses Associated with those Individuals**

─────────────────────── (continued)
maintained offices in the Commonwealth of Massachusetts at 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752 between 2012 and at least April 2014. TelexFree Financial, Inc. is a corporation duly organized and existing under the laws of the State of Florida, having its last known principal place of business at 2321 NW 37th Avenue, in Coconut Creek, Florida 33063.  TelexFree Financial is a wholly owned subsidiary of TelexFree, LLC.

34.     James M. Merrill ("Merrill") is an individual with a last known usual place of abode located at 1 Coburn Drive in Ashland, County of Middlesex, Commonwealth of Massachusetts 01721. Merrill also did business as Disk Matrix in New York.[9] Merrill is President, Secretary and Director of Telex Mobile and a General Partner in Telex Electric. Merrill has never registered with the Commonwealth of Massachusetts as a broker or dealer of securities.

35.     Carlos N. Wanzeler ("Wanzeler") with a last known usual place of abode located at 373 Howard Street, in Northborough, County of Worcester, Commonwealth of Massachusetts 01532. Wanzeler also did business as Disk Matrix in New York. See Attachment 1.[10] Wanzeler is Treasurer and Director of Telex Mobile. Wanzeler is a General Partner of Telex Electric. Wanzeler has never registered with the Commonwealth of Massachusetts as a broker or dealer of securities.

36.     Steven M. Labriola ("Labriola") is an individual with a last known usual place of abode located at 21 Kiwanis Beach Road, in Upton, County of Worcester, Commonwealth of Massachusetts 01568.  Labriola is identified as a Director of Common Cents Communications, Inc. in its filed Articles of Incorporations with the Massachusetts Secretary of State Office.  Labriola also functions as the International sales Director of TelexFree. Labriola

---

[9] At all material times, Merrill was President, Secretary, and Director of TelexFree, Inc. Merrill was Manager of TelexFree, LLC, and was listed with the Massachusetts Secretary of State Corporations Division as an authorized person to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property.  Merrill was also President, Secretary, and Director of TelexFree Financial.

[10] Wanzeler was Treasurer and Director of TelexFree, Inc. and Manager of TelexFree, LLC. Wanzeler was Vice-President, Treasurer, and Director of TelexFree Financial and was listed with the Massachusetts Secretary of State Corporations Division as an authorized person to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property.

was also an integral part of Disk Matrix in New York. Labriola has never registered with the Commonwealth of Massachusetts as a broker or dealer of securities.

37.     Joseph "Joe" H. Craft ("Craft") is an individual with a last known usual place of abode located at 333 W. Tennyson Road, Boonville, Indiana 47601certified At times material to this complaint, Craft served as the Chief Financial Officer of TelexFree Inc. and TelexFree, LLC. Craft was also hired to serve as TelexFree, LLC's Chief Financial Officer on or before December, 2013. [11]   Craft has never registered with the Commonwealth of Massachusetts as a broker or dealer of securities.

38.     John F. Merrill is an individual with a last known usual place of abode located at 7 Kinnicutt Rd. Worcester, MA 01602-1528. John Merrill serves as President of Fidelity Bank. John Merrill is the brother of TelexFree founder and owner James M. Merrill and at all times acted in concert with him and provided him with advise and encouragement related to TelexFree's unlawful operation.

39.     Carlos Costa ("Costa") is an individual with an as yet uncertain last known place of abode in Worcester, County of Worcester, Commonwealth of Massachusetts 01604. Costa was listed as Manager of TelexFree, LLC with the Massachusetts Secretary of State Corporations Division. Costa has never registered with the Commonwealth of Massachusetts as a broker or dealer of securities

40.     Paralegal Doe served as TelexFree, LLC's agent, servant or employee to this complaint.  She is identified at this time only by an email address. Paralegal Doe served as TelexFree's person on the ground and administrator in Las Vegas, Nevada.

**iii.     Insider Promoters including Insider Promoter Does 1-63**

---

[11] *See* Omnibus Declaration of William H. Runge, Case 14-1552-abl, Doc. 13, ¶ 31, Exhibit 6. This was prior to the appointment of TelexFree Trustee Darr. Exhibit 7

41.     Insider Promoter Sanderley Rodrigues de Vasconcelos ("Rodrigues") is an individual with a last known usual place of abode located at 100 Stockton Street, Apt. 49, in Chelsea, County of Suffolk, Commonwealth of Massachusetts 02150. Rodrigues is the sole Officer, Director, and Registered Agent of WWW Global Business.At no time has Rodrigues been registered with the Commonwealth of Massachusetts as a broker or dealer of securities.

42.     Insider Promoter WWW Global Business, Inc. ("WWW Global Business") is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 189 Squire Road, Suite 40, in Revere, County of Suffolk, Commonwealth of Massachusetts. Rodrigues organized WWW Global Business on or about February 7, 2013, to market and sell TelexFree investments. WWW Global Business has never registered with the Commonwealth of Massachusetts or with any other authority anywhere in the world as a broker or dealer of securities.

43.     Insider Promoter Santiago de la Rosa ("De La Rosa") is an individual with a last known usual place of abode located at 189 Beacon Hill Avenue, Unit 2, in Lynn, County of Essex, Commonwealth of Massachusetts 01902.  De La Rosa appears in internet videos promoting TelexFree and is one of TelexFree's most successful promoters, having recruited numerous other Promoters/Investors for TelexFree within the Dominican Community in Massachusetts and elsewhere. s. De La Rosa has never registered with the Commonwealth of Massachusetts or with any other authority anywhere in the world as a broker or dealer of securities

44.     Insider Promoter Randy N. Crosby ("Crosby") is an individual with a last known usual place of abode located at 30 Club Court, in Alpharetta, Georgia 30005.  Crosby appears in internet videos promoting TelexFree and is one of TelexFree's most successful

promoters, having recruited numerous other Promoters/Investors for Telexfree – especially

through a website known as "everybodygetspaidweekly.biz". Crosby has never registered with

the Commonwealth of Massachusetts or with any other authority anywhere in the world as a

broker or dealer of securities.

45.     Insider Promoter Faith R. Sloan ("Sloan") is an individual with a last known

usual place of abode located at 515 E. End Avenue, Unit 105, in Calumet City, Illinois 60409.

Sloan appears in internet videos promoting TelexFree, and is one of TelexFree's most

successful Promoters, having recruited numerous Promoters/Investors for Telexfree –

especially through a website known as "telexfreepower.com". Sloan has never registered with

the Commonwealth of Massachusetts or with any other authority anywhere in the world as a

broker or dealer of securities.

### iv.     Attorneys

46.     Retained Licensed Professional ("RLP") Gerald P. Nehra ("Nehra") is an

individual with a last known usual place of abode located at 1322 Peck St, Muskegon, MI

49441.  Nehra maintains a second last known place of abode at 2149 Tall Oak Court, Sarasota,

Florida 34232.  Nehra is sued individually, as a lawyer and as a member of law firms

referenced herein.

37.     RLP Nehra is an attorney duly licensed to practice law in the State of Michigan

with offices at 1710 Beach Street in Muskegon, Michigan 49441. Nehra is the sole member,

manager, and registered agent for defendant

38.     Retained Licensed Professional Gerald P. Nehra, Attorney at Law, PLLC, a

professional limited liability company engaged in the practice of law and duly organized and

12

existing under the laws of Michigan, having a principal place of business at 1710 Beach Street in Muskegon, Michigan 49441.

39.     Retained Licensed Professional Richard W. Waak ("Waak") with a last known usual place of abode located at 11300 E. Shore Dr. Delton, MI 49046-8483. Waak is sued individually, as a lawyer and as a member of law firms referenced herein.

37.     RLP Waak is an attorney duly licensed to practice law in the State of Michigan with offices at 11300 East Shore Drive, Delton, Michigan 49046. Waak is the sole member, manager and registered agent for

38.     Retained Licensed Professional Richard W. Waak, Attorney at Law, PLLC, a professional limited liability company engaged in the practice of law and duly organized and existing under the laws of Michigan, having a principal place of business at 11300 East Shore Drive, Delton, Michigan 49046.

39.     Retained Licensed Professional Law Offices of Nerha and Waak is a law firm with usual places of business located at 11300 East Shore Drive, Delton, Michigan 49046, and 1710 Beach Street, in Muskegon, Michigan 49441.  The Law Offices of Nehra and Walk is a general partnership between Defendants Nehra, Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC.

     **v.**    **Certified Public Accountant**

40.     Retained Licensed Professional Joseph H. Craft is certified public accountant who maintains regular places of business located at 333 W. Tennyson Road, Boonville, Indiana 47601 and 825 E. Main Street, Boonville, Indiana 47601-1885. Craft is sued individually, as a lawyer and as a member or owner of the accounting businesses referenced herein. Also as an officer of TelexFree entities as set forth above.

41.     Retained Licensed Professional Joe H. Craft, CPA/PFS, CFP holds himself out as conducting business in Kentucky under the name and style.

42.     Craft prepared and approved the financial statements and tax documents relating to the TelexFree pyramid Ponzi scheme.  Prior to April 2012, Craft was retained to serve as TelexFree's accountant and prepared its financial statements and tax related documents.[12]

43.     Retained Licensed Professional Financial Solutions, LLC ("Craft Financial") is a limited liability company duly organized and existing under the laws of Indiana, with a principal place of business at 825 E. Main Street in Boonville, Indiana 47601-1885. Craft Financial is engaged in the business of providing accounting services and financial advice. Defendant Joseph H. Craft is the sole member, manager, and registered agent of defendant Craft Financial.

## C.     Financial Institution Defendants

### i.     Banks

44.     Fidelity Co-operative Bank doing business as Fidelity Bank, ("Fidelity Bank") is a Massachusetts Chartered Banking Institution, having its principal offices at 675 Main Street, in Fitchburg, County of Worcester, Commonwealth of Massachusetts 01420.  At all times material herein, Defendant Fidelity Bank provided banking services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

45.     Middlesex Savings Bank ("Middlesex Savings") is a Massachusetts Chartered Banking Institution, having its principal offices at 6 Main Street, in Natick, County of Middlesex, Commonwealth of Massachusetts 01760.  At all times material herein, Defendant

---

[12] *See* Omnibus Declaration of William H. Runge, Case 14-1552-abl, Doc. 13, ¶ 31, Exhibit 6. Runge served as TelexFree's Chief Restructuring Officer prior to the appointment of TelexFree Trustee Darr. Exhibit 7

Middlesex Savings provided banking services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

46.     TD Bank, N.A. ("TD Bank") is a national banking institution in the United States chartered and supervised by the federal Office of the Comptroller of the Currency with its principal place of business at 15 Broad Street in Boston, County of Suffolk, Commonwealth of Massachusetts 02109.  At all times material herein, Defendant TD Bank provided banking services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

47.     Bank of America Corporation ("Bank of America") is a publicly traded corporation duly organized and existing under the laws of the State of Delaware.  Bank of America is a national banking institution in the United States chartered and supervised by the federal Office of the Comptroller of the Currency, with offices at 175 Federal Street, in Boston, County of Suffolk, Commonwealth of Massachusetts 02110.  At all times material herein, the Defendant Bank of America provided banking services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

48.     Bank of America, N.A. is a national banking institution in the United States chartered and supervised by the federal Office of the Comptroller of the Currency, with a principal place of business in Charlotte, North Carolina.  Bank of America, N.A. is a subsidiary of Bank of America, and conducts business in the Commonwealth of Massachusetts at, *inter alia*, 100 Federal Street, in Boston, County of Suffolk, Commonwealth of Massachusetts

02110.  At all times material herein, the Defendant Bank of America, N.A. provided banking

services, maintained accounts, and received transfers of funds from or for the benefit of

TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19,

2013 Injunction.

49.     Citizens Financial Group, Inc. ("Citizens Financial") is a corporation duly

organized and existing under the laws of the State of Delaware, having its principal offices in

Providence, Rhode Island.  Citizens Financial is a banking institution and has offices at 28

State Street, Boston, County of Suffolk, Commonwealth of Massachusetts 02109 after they

knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

50.     Citizens Bank of Massachusetts ("Citizens Bank") is a subsidiary of Citizens

Financial and conducts business in the Commonwealth of Massachusetts at 28 State Street, in

Boston, County of Suffolk, Commonwealth of Massachusetts 02109.  At all times material

herein, Defendant Citizens Bank provided banking services, maintained accounts, and received

transfers of funds from or for the benefit of TelexFree after they knew of the findings of the

Brazilian Court in Acre issued and the June 19, 2013 Injunction.

51.     Wells Fargo & Company ("Wells Fargo") is a publicly traded corporation duly

organized and existing under the laws of the State of Delaware, having its principal office in

San Francisco, California; and conducting business within the Commonwealth of

Massachusetts.  At all times material herein, Wells Fargo provided banking services,

maintained accounts, and received transfers of funds from or for the benefit of TelexFree after

they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013

Injunction.

52.     Wells Fargo Bank, N.A. ("Wells Fargo Bank") is a national banking institution in the United States chartered and is supervised by the federal Office of the Comptroller of the Currency, with a principal place of business in Sioux Falls, South Dakota.  Wells Fargo Bank is a subsidiary of Wells Fargo, and conducts business in the Commonwealth of Massachusetts at, *inter alia*, 201 Washington Street, in Boston, County of Suffolk, Commonwealth of Massachusetts.  At all times material herein, Defendant Wells Fargo Bank provided banking services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction

### ii.    Payment Processors

53.     Global Payroll Gateway, Inc. ("GPG") is a corporation duly organized and existing under the laws of the State of California, having its principal offices at 18662 MacArthur Boulevard, Suite 200, in Irvine, California 92612.  GPG provided payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

54.     International Payout Systems, Inc. ("IPS") is a corporation duly organized and existing under the laws of the State of Florida, having its principal offices at 2500 East Hallandale Beach Boulevard, Suite 800, Hallandale Beach, Florida 33009.  IPS provides provided payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

55.     Propay, Inc. ("ProPay") is a corporation duly organized and existing under the laws of the State of Utah with its principal offices at 3400 North Ashton Boulevard, Lehi, Utah 84043 and also does business as PROPAY.COM.  ProPay provided provided payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

56.     Base Commerce, LLC ("Base Commerce") is a limited liability company duly organized and existing under the laws of the State of Arizona with its principal offices at 7910 S. Kyrene Road, Suite 106, Tempe, Arizona 85284, and it also does business as Phoenix Payments.  Base Commerce provided provided payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

57.     Vantage Payments, LLC ("Vantage Payments") is a limited liability company duly organized and existing under the laws of the State of Arizona, having its principal offices at 8300 N. Hayden Road  #A207, Scottsdale, Arizona 85251.  Defendant Vantage Payments provided provided payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

58.     It is believed that additional payment – processing services aided and abetted in TelexFree's Pyramid Ponzi Scheme by providing payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors even after they knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013

Injunction but their identities are as yet unknown.  For ease of reference, they can only be referred to herein at this time as Defendant Payment – Processing Services Doe.

### iii. Other Defendants

59.     FMR, LLC, also known as Fidelity Investments ("Fidelity Investments") has its principal offices at 245 Summer Street, Suite F7B, in Boston, County of Suffolk, Commonwealth of Massachusetts 02110 and is a Foreign Limited Liability Company, organized and existing under the laws of the State of Delaware,.  At all times material herein, Defendant Fidelity Investments provided investment and asset management services, maintained accounts, and received transfers of funds from or for the benefit of TelexFree even after it knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

60.     Waddell & Reed Financial, Inc. ("Waddell & Reed Financial") has a regular place of business located at 281 Winter Street, in Waltham, County of Middlesex, Commonwealth of Massachusetts 02451. Waddell & Reed Financial is a publicly traded corporation duly organized and existing under the laws of the State of Delaware.  At all times material herein, Waddell & Reed Financial, Inc. provided investment and financial services, and provided accounts and received transfers of funds from or for the benefit of TelexFree even after it knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

61.     Waddell & Reed, Inc. ("Waddell & Reed") has a regular place of business located at 281 Winter Street, in Waltham, County of Middlesex, Commonwealth of Massachusetts 02451. Waddell & Reed is a subsidiary of Waddell & Reed Financial and at all times material herein, it provided investment and financial services, and provided accounts

and received transfers of funds from or for the benefit of TelexFree even after it knew of the findings of the Brazilian Court in Acre issued and the June 19, 2013 Injunction.

The Putative Class Representatives seek to obtain damages, restitution and injunctive relief for the Class, as defined below, from the above identified defendants. And reserve their right to amend in accordance with the evidence.

## IV.

## FACTS AND ALLEGATIONS

### A.    Securities Defined

63.    A **security** is a tradable financial asset of any kind.

64.    The United States Securities Exchange Act of 1934 defines a security as: "Any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

65.    The company or other entity issuing the security is called the issuer ("Issuer"). A country's regulatory structure determines what qualifies as a security. For example, private

investment pools may have some features of securities, but they may not be registered or regulated as such if they meet various restrictions.

66.     An investment is the putting of money into an asset with the expectation of capital appreciation, dividends, and/or interest earnings. The traditional economic function of the purchase of securities is investment, with the view to receiving income and/or achieving capital gain.

67.     Most generally, to lawfully sell a security, the Issuer must register with governmantal authorites. Issuer's are also required to fully disclose all material information that would allow project investors to identify and manage the risks related to the investment.

68.     Securities are the traditional way that commercial enterprises raise new capital.[13] Through securities, capital is provided by investors who purchase the securities upon their initial issuance.

69.     In the US, the public offer and sale of securities must be either registered pursuant to a registration statement that is filed with the U.S. Securities and Exchange Commission (SEC) or are offered and sold pursuant to an exemption therefrom. Dealing in securities is regulated by both federal authorities (SEC) and state securities departments.

70.     With respect to investment schemes that do not fall within the traditional categories of securities listed in the definition of a security (Sec. 2(a)(1) of the 33 Act and Sec. 3(a)(10) of the 34 act) the US Courts have developed a broad definition for securities that must then be registered with the SEC.

71.      When determining if there a is an "investment contract" that must be registered

---

[13] Securities may be an attractive alternative to bank loans depending on their pricing and market demand for particular characteristics. One disadvantage of bank loans as a source of financing is that the bank may seek a measure of protection against default by the borrower via extensive financial covenants.

the courts look for an investment of money, a common enterprise and expectation of profits to come primarily from the efforts of others.[14]

**B.    Ponzi Pyramid Schemes**

72.    The size and speed of today's financial transactions and the advent and growth of the Internet over past two decades, have spurred a proliferation of investment fraud schemes. By taking advantage of electronic communication and currency transfers financial fraud preditors are able to quickly amass staggering illigal profits from similarly situtated victims across broad geographic areas and demographic groups.

73.    A Ponzi scheme is a fraudulent investment operation where the operator, an individual or organization, pays returns to its investors from new capital paid to the operators ("Operators") by new investors, rather than from profit earned by the operator.

74.    Operators of Ponzi schemes usually entice new investors by offering higher returns than other investments, in the form of short-term returns that are either abnormally high or unusually consistent.

75.    Here TelexFree falsely guaranteed their investors returns of 200% or more per year.

76.    The perpetuation of the high returns requires an ever-increasing flow of money from new investors to sustain the scheme.

77.    TelexFree entities and its Owners, Officers, Directors, Attorneys, Certified Public Accountants, Insider Promoters and Doe Insider Promoters knowingly and with scienter, acted as Operators in the TelexFree pyramid Ponzi scheme.

78.    A pyramid scheme is an unsustainable business model that involves promising participants payment or services, primarily for enrolling other people into the scheme, rather

---

[14] See *SEC v. W.J. Howey Co.* 328 U.S. 293 (1946)

than supplying any real investment or sale of products or services to the public.

79.    In a pyramid scheme, an Operator compels individuals to make a payment and join. In exchange, the Operator promises its new members a share of the money taken from every additional member that they recruit.

80.    The highest Operator levels, for example the CEO, Owner or directors (those at the top of the pyramid) receive a share of these payments. For those at the top of the pyramid, the scheme is lucrative and has other benefits. Whether or not those at the top level offer any real product for sale, the organization's membership has a strong incentive to continue recruiting and funneling money to the top of the pyramid. Such organizations seldom involve sales of products or services with real value. Without creating any goods or services, the only ways for a pyramid scheme to generate revenue are to recruit more members or solicit more money from current members. Eventually, recruiting is no longer possible and the vast majority of members are unable to profit from the scheme.

81.    According to the U.S. Federal Trade Commission, many multi level marketing schemes "simply use the product to hide their pyramid structure."[15]

82.    The SEC warns that "….fraudsters behind a pyramid scheme may go to great lengths to make the program look like a legitimate multi-level marketing program. But despite their claims to have legitimate products or services to sell, these fraudsters simply use money coming in from new recruits to pay off early stage investors. But eventually the pyramid will collapse. At some point the schemes get too big, the promoter cannot raise enough money from new investors to pay earlier investors, and many people lose their money."

83.

---

[15]    "Pyramid Schemes", May 13, 1998, Federal Trade Commission. See also, http://www.ftc.gov/system/files/documents/advisory_opinions/staff-advisory-opinion-pyramid-scheme-analysis/040114bizopp-pyramid.pdf



**Wanted: More Dupes. Lots More.**
As they unfold, Ponzi schemes ultimately require an unsustainably large pool of investors to keep the racket going.

In this simplified example, the schemer starts by taking $100 from investors, promising to double it within a month. But instead of investing their money, he pays them with funds from larger, successive rounds of investors.

THE SCHEMER

FIRST ROUND:
TWO INVESTORS

SECOND ROUND:
FOUR INVESTORS

THIRD ROUND:
EIGHT INVESTORS

NEXT: 16
INVESTORS

**1** In the first month, the schemer takes $100 each from the first **two investors**.

**2** Because the schemer pockets the $200, he needs to find $400 — **four investors** — in the second month to pay the returns promised.

**3** In the third month, he owes $800, so he has to find **eight new investors**. He'll have to get more than $100 from each of them if he wants to keep skimming money for himself.

**4** In the next month, he'll need **16 investors**. And so on.

**5** By the 10th round, he'll need to find a new group of **1,024 investors**. By the 18th round, he would have to come up with over a **quarter of a million investors**.

THE NEW YORK TIMES

84.     TelexFree Promoters were also offered compensation in exchange for the essentially passive process of copying and placing duplicative, pre-written TelexFree ads on internet sites.

85.     The passive internet copy placement process generated little or no revenue for TelexFree and required virtually no effort by the investors and was an intentionally designed sham.

86.     TelexFree uniformly and systematically did not require Promoters to sell its VoIP product to qualify for payments prior to March 9, 2014.

87.     Within the TelexFree pyramid, there was nothing of value actually sold by its Promoters because there was no real product offered. The TelexFree VoIP was not patented or proprietary. The TelexFree VoIP offered nothing more than what was and is otherwise available for free through other Internet providers.

88.     The only actual product offered was the promoters selling memberships. In essence, TelexFree's business model was nothing more than an illusion and so,  a ponzi scheme.

89.     TelexFree and the other Defendants willfully or knowingly established a pyramid-type Ponzi scheme.  TelexFree and the other Defendants paid certain investors, including the Insider Promoters and Doe Insider Promoters unlawful, pyramid scheme returns on investment while wrongfully causing the Plaintiffs and similarly situated members of the class to suffer ascertainable economic loss in an amount in excess of $300 million.

## C.     General Allegations

90.     TelexFree and its Officers James M. Merrill, Carlos N. Wanzeler, Steven M. Labriola, Carlos Costa, Joseph H. Craft, a/k/a Joe H. Craft (collectively, "Defendant Officers"), Sanderley Rodrigues de Vasconcelos; WWW Global Business, Inc.; Santiago de La Rosa; Randy N. Crosby; Faith R. Sloan (collectively sometimes referred to as the "Named Insider Promoters"), the Doe Insider Promoters, TelexFree's retained licensed professionals[16] including the Attorney Defendants, Paralegal Doe, Banking Institution Defendants[17], Investment Service Provider Defendants[18] and Payment Processing Services Companies[19] knew that the Pyramid

---

[16] Attorneys Gerald P Nehra, Esq, individually and doing business as the Law Offices of Nehra and Waak; Gerald P Nehra, Attorney at Law, PLLC; Richard W. Waak individually and doing business as the Law Offices of Nehra and Waak; Richard W. Waak Attorney at Law, PLLC; Joe H. Craft individually and d/b/a as Certified Public Accountant; Craft Financial Solutions, LLC as well as the Doe Professional Services Providers, are sometimes referred to herein as "Retained Licensed Professionals" or "RLP Defendants."

[17] Bank Of America Corporation, Bank Of America, N.A., TD Bank, N.A., Citizens Financial Group, Inc.,, Citizens Bank of Massachusetts, Fidelity Co-Operative Bank, Middlesex Savings Bank, Wells Fargo & Company, Wells Fargo Bank, N.A., and the Doe Banks are sometimes referred to herein as the "Banking Institution Defendants."

[18] FMR, LLC, also known as Fidelity Investments, Waddell & Reed Financial, Inc., Waddell & Reed, Inc., and the Doe Investment Services Providers are sometimes referred to herein as the "Investment Services Provider Defendants."

[19] Global Payroll Gateway Inc., International Payout Systems, Inc., Propay, Inc., doing business as Propay.com, Base Commerce, LLC, doing business as Phoenix Payments,  and Vantage Payments, LLC are referred to herein as "Payment Process Services Companies" or "PPSC

Ponzi Scheme was not sustainable, and that the representations on TelexFree's website and in its marketing materials were false, unfair, and deceptive including, but not limited to, those concerning the guaranteed returns.

91.     At all times material, TelexFree and its Defendant Officers, the Named Insider Promoters, the Doe Insider Promoters, Retained Licensed Professionals, Paralegal Doe, Banking Institution Defendants, Investment Service Provider Defendants and Payment Processing Services Companies knew that TelexFree was selling unregistered securities to the members of the putative classes.

92.     Despite actual knowledge, or at least a general awareness, of the illegalities of TelexFree revenue generation and business model, and the findings of the Brazilian Court in Acre Defendant Officers, the Named Insider Promoters, Doe Insider Promoters, Retained Licensed Professionals, Paralegal Doe, Banking Institution Defendants, Investment Service Provider Defendants and Payment Processing Services Companies knew that TelexFree was an illegal Pyramid Ponzi Scheme which involved the illegal sale of securities, they continued to participate in the attraction and collection of funds from new investors and continued to substantially assist and encourage TelexFree's fraud and to aid, abet and further such illegal activities.

93.     Despite actual knowledge, or at least a general awareness, of the illegalities of TelexFree revenue generation and business model, and the findings of the Brazilian Court in Acre Defendant Financial Institutions, Payment Processing Services Companies, Investment Service Providers, Retained Licensed Professionals and Officers, the Named Insider Promoters, Doe Insider Promoters, Retained Licensed Professionals, Paralegal Doe continued to participate in the attraction and collection of funds from new investors, continued to allow payments to

———————————————————— (continued)
Defendants."

26

process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and otherwise continued to substantially assist and encourage TelexFree's its illegal Pyramid Ponzi Scheme, commit fraud and to aid, abet and further TelexFree's illegal activities.

94.     On April 14, 2014, TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. abruptly sought bankruptcy protection in Nevada under Chapter 11, admitting that they could not and cannot meet their obligations from VoIP revenues and seeking authority to reject all their current obligations to Promoters.

95.     At all material times, Defendants have violated the antifraud and securities registration provisions of the federal and state securities laws.

96.     At all material times and from at least in or about January 2012 , TelexFree and the other Defendants unlawfully, willfully and knowingly used the means and instrumentalities of interstate commerce and the mails, directly and indirectly, for the purchase and sale of unregistered securities.

97.     TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of the Massachusetts Uniform Securities Act, MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, for the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A.

98.     TelexFree and the other Defendants engaged in:  (a) fraudulent or deceptive conduct with the purchase or sale of securities, in violation of Section 10 (b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 there under; (b) fraud in the offer or sale of securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"); and (c)

the offer or sale of unregistered securities, in violation of Section 5 of the Securities Act.

99.    TelexFree and the other Defendants also violated Title 17, Code of Federal

Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b)

making untrue statements of material facts and omitting to state material facts necessary to

make the statements made, in the light of the circumstances under which they were made, not

misleading, and (c) engaging in acts, practices, and courses of business which operated and

would operate as a fraud and deceit upon persons.

100.    The Owners, Officers and Directors and Various Associated Individuals and

Businesses each knew in advance that TelexFree pyramid Ponzi scheme and with unlawful

intent or a general awareness acted to substantially assist or encourage the scam and in doing

so, significantly profited from it. Most attended an invitation only meeting at TelexFree's

headquarters and sales offices located at 225 Cedar Hill Street, Suite 200, in Marlborough,

County of Middlesex, Commonwealth of Massachusetts 01752 prior to the March 9, 2014

change of TelexFree's form contract.

101.    The Insider Promoters and Insider Promoter Does 1-62 each knew in advance

that TelexFree pyramid Ponzi scheme and with unlawful intent or a general awareness acted to

substantially assist or encourage the scam and in doing so, significantly profited from it. Most

attended an invitation only meeting at TelexFree's headquarters and sales offices located at 225

Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of

Massachusetts 01752 prior to the March 9, 2014 change of TelexFree's form contract.

102.    The RLP Defendants each knew in advance that TelexFree pyramid Ponzi

scheme and with unlawful intent or a general awareness acted to substantially assist or

encourage the scam and in doing so, significantly profited from it. Most attended an invitation

only meeting at TelexFree's headquarters and sales offices located at 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752 prior to the March 9, 2014 change of TelexFree's form contract.

**D.    Background of Founders and Formation of TelexFree, Inc., f/k/a Common Cents, Inc.**

103.    TelexFree, Inc. was originally organized on December 31, 2002 under the name Common Cents Communications, Inc. ("CCCI").  CCCI's name was changed to TELEXFREE, INC on February 15, 2012.

104.    Acting on Costa's proposal, Wanzeler and Merrill changed the name of Common Cents Communications, Inc. to TelexFree, Inc., and Wanzeler and Costa together created a website, "telexfree.com."

**E.    Brazilian Help, Disk A Vontade, and Ympactus**

105.    As early as 2005, Wanzeler and the other Direct Participant Defendants were operating purported telecommunications businesses in the United States and Brazil, under the names "Brazilian Help" and "Disk A Vontade Telefonia," respectively.

106.    Disk A Vontade Telefonia, Ltd., also known as Diskavontade, also known as Disk (sometimes referred to as "Disk A Vontade"), is a Brazilian Limited Liability Company, now or formerly having its principal offices as Rua Jose Luiz Gabeira, NRO 170, APTO 103 Barro Vermelho, with a Massachusetts office located at 225 Cedar Hill Street, Suite 200, in Marlborough, Massachusetts 01752.

107.    Disk A Vontade's Massachusetts office is in the same building in Marlborough, Massachusetts as TelexFree.

108.    Carlos Wanzeler is the Chief Executive Officer of Disk A Vontade.

109.    Merrill is Vice President and a Signatory of Disk A Vontade.

110.     Disk A Vontade's domain ("discavontade.com") is registered to Defendant Carlos Wanzeler.

111.     Brazilian Help, Inc. ("hereinafter sometimes referred to as "Brazilian Help") is a Domestic Profit Corporation organized and existing under the laws of the Commonwealth of Massachusetts, now or formerly having a principal place of business at 225 Cedar Hill Street, Suite 118, in Marlborough, Massachusetts 01752.

112.     Wanzeler is the President, Secretary, Treasurer, and Registered Agent of Brazilian Help.

113.     Brazilian Help's Massachusetts office is in the same building in Marlborough, Massachusetts as TelexFree.

114.     Brazilian Help and Disk A Vontade were, , the American and Brazilian branches, respectively, of the same enterprise.

115.     Between approximately 2005 and 2012, Costa, a longtime friend of Wanzeler, was employed by Disk A Vontade and was Wanzeler's top sales agent in Brazil.

116.     In early 2012, Costa suggested to Wanzeler they solicit customers through online advertisement.

117.     Disk A Vontade was the registered owner of the Telexfree.com domain name.

118.     In July 2012, Wanzeler, Merrill and Costa together formed TelexFree, LLC.

119.     Ympactus Comercial, Ltda-ME, is a Brazilian Limited Liability Company, which serves as TelexFree's Brazilian branch.

120.     Ympactus has been jointly controlled by Wanzeler, Costa, and Merrill.

121.     According to the SOC, there is no distinction between U.S. TelexFree operations and Brazilian operations. The United States and Brazilian TelexFree entities use the same

website and back office support, merely providing identical information in multiple languages.

122.    TelexFree management described the ownership interests in TelexFree, Inc. (Massachusetts-based), TelexFree LLC (Nevada-based) and Ympactus (Brazilian-based), overlap.

123.    In late 2013, Costa withdrew his ownership for what Merrill characterized as "*legal reasons*."[20]

124.    Both Merrill and Wanzeler provided testimony to the SEC stating that they transferred at least $3,000,000.00 to Costa long after Brazilian authorities shut down Ympactus operations.[21]

**F.    TelexElectric, LLLP's and Telex Mobile Holding, Inc.'s Involvement in the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

125.    TelexElectric is a Nevada limited liability limited partnership formed on December 2, 2013 by Co-Defendants Merrill and Wanzeler.

126.    Co-Defendants Merrill and Wanzeler further list their address as 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147, which is the same location as TelexFree, LLC.

127.    TelexElectric also lists as its address 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

128.    Telex Mobile is a Nevada corporation formed on November 26, 2013.

129.    Defendants TelexFree, LLC, TelexFree, Inc., TelexFree Financial, TelexElectric and TelexFree Mobile Holdings are alter ego entities, which combine to form a single enterprise.

---

[20] See Administrative Complaint of instituted by the Commonwealth of Massachusetts, Office of the Secretary of the Commonwealth Securities Division, Docket No. 2014-0004, page 7.
[21] *Id.*

130.    TelexFree's financial statements reveal that TelexElectric received a $2,022,329.00 "loan" from TelexFree during the class period. [22]

131.    TelexFree's financial statements further reveal that TelexFree Mobile received a $500,870 "loan" from TelexFree during the class period.[23]

132.    TelexElectric was fraudulently set up to shelter funds rightfully belonging to the putative class.

133.    These "loans" were fraudulent transfers by TelexFree to evade claims by investors and creditors, and otherwise to unlawfully abscond with funds that rightfully belonged to creditors and investors.

**G.    TelexFree, LLC**

134.    Telex Free, LLC was organized under the laws of the State of Nevada on July 19, 2012.

135.    There is no distinction between the business operations of TelexFree, LLC and TelexFree, Inc.

136.    At all material times, TelexFree LLC was identified as a limited liability company as registered with the Corporations Division of the Secretary to the Commonwealth of Massachusetts (Identification Number 001105166).

137.    TelexFree, LLC registered with the Secretary of State for the Commonwealth of Massachusetts on April 18, 2013.

138.    TelexFree, LLC maintained a post office box at 4705 S. Durango Drive, #100-J51, Las Vegas, Nevada 89147.

---

[22] See TelexFree, LLC Balance Sheet as of December 31, 2013, marked as Exhibit 13
[23] *Id.*

139.    At least between February 15, 2012 and approximately April 15, 2014, TelexFree, LLC operated a Massachusetts office at 225 Cedar Hill St., Suite 200, Marlborough, Massachusetts 01752.

140.    At all material times, Co-Defendants Carlos Costa, James M. Merrill and Carlos N. Wanzeler were the Managers of TelexFree, LLC.

141.    At least between February 15, 2012 and approximately April 15, 2014, TelexFree, LLC's registered agent for the Commonwealth of Massachusetts was James Merrill whose address is identified as 225 Cedar Hill St. Suite 200, Marlborough, MA 01752.

142.    At least between February 15, 2012 and approximately April 15, 2014, Co-Defendants James Merrill, Carlos Wanzeler, Steven Labriola, Joseph H. Craft and Carlos Costa conducted the business of TelexFree, LLC in TelexFree's Massachusetts office.

143.    TelexFree caused a copy the Business Entity Summary for TelexFree, LLC to be filed with the Corporations Division of the Secretary of the Commonwealth of Massachusetts.

144.    Since mid-November 2013, TelexFree has transferred approximately $30 million from its operating accounts to accounts owned and controlled by TelexFree, its affiliated companies or the individual Defendants.

145.    Tens of millions of additional investor funds received by TelexFree are unaccounted for.

**H.    TelexFree Financial, Inc.**

146.    TelexFree, Inc.[24], of which co-defendants Merrill and Wanzeler are officers and directors, is a domestic profit corporation registered with the Corporations Division of the Secretary to the Commonwealth of Massachusetts (Identification Number 000832397).

---

[24] Paragraph 2.1.2 of the standard TelexFree contract states "TELEXFREE INC, from its headquarters in, Marlboro, Massachusetts (U.S.), on the basis of an operating contract between

33

147.	At least between February 15, 2012 and approximately April 15, 2014, TelexFree, Inc. maintained a principal office at 225 Cedar Hill St. Suite 200, Marlborough, MA 01752.

148.	Since February 15, 2012, Co-Defendants James Merrill, Carlos Wanzeler, Steven Labriola, Joseph H. Craft and Carlos Costa conducted the business of TelexFree, Inc. in the Marlborough, Massachusetts office

149.	Co-Defendant Joseph H. Craft incorporated TelexFree Financial on December 26, 2013.

150.	TelexFree Financial was fraudulently set up to shelter funds rightfully belonging to the putative class.

151.	At all material times, Co-Defendants James M. Merrill and Carlos N. Wanzeler are officers and directors of TelexFree Financial, and Co-Defendant Carlos N. Wanzeler is its registered agent.

152.	On December 30 and December 31, 2013, TelexFree Financial received wire transfers totaling $4,105,000 from TelexFree, Inc. and TelexFree, LLC.

153.	On April 14, 2014, Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. abruptly sought bankruptcy protection in Nevada under Chapter 11, admitting that they cannot meet their obligations from VoIP revenues, and sought authority to reject all their current obligations to Promoters.

--------------------------------- (continued)
the latter and the CONTRACTOR (YMPACTUS), has as its primary activity VOIP telephony, using its equipment installed at its headquarters in Massachusetts, where it makes the necessary connections for these calls; it also provides virtual media, through the website www.telexfree.com to associates and to the PROMOTERS that YMPACTUS/TELEXFREE coordinates and controls, including the respective publicity channels."

I.    **Relationship Between Defendants TelexFree Mobile Holding, Inc. and TelexElectric, LLLP's and TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc.**

154.    At least since February 15, 2012, there has been a high degree of operational interdependence among all the TelexFree entities and the individuals who acted as Operators for them. The operations of these entities, and the individual actions of the Operators to line their own individual pockets are indistinguishable.

155.    All shared common management and ownership and physical location of their operations right down to stamps, phone lines and copy paper. The TelexFree entities have also shared common financial, strategic, legal, and human resources.

156.    Since February 15, 2012, Defendants Merrill, Wanzeler, Labriola, Craft and Costa have together owned and operated the TelexFree entities with no distinction among these entities.

157.    At least between February 15, 2012 and approximately April 15, 2014, funds were freely transferred between the TelexFree entities with no distinction among these entities.

158.    Between February 15, 2012 and at least April 15, 2014, the TelexFree entities have.

        a.    Conducted business from the same business addresses;

        b.    Retained the same employees;

        c.    Conducted business using the same telephone lines;

        d.    Utilized the same copy machines in business;

        e.    Utilized the same banks and bank accounts in business;

        f.    Utilized the same payment processing services companies in business;

        g.    Sought and received professional services from the same accountants; and

        h.    Sought and received professional services from the same attorneys.

159.    Defendant TelexFree entities are alter ego entities, which combine to form a single enterprise.

160.    On June 13, 2013, the 2nd Civil Court of Rio Branco, in the Brazilian State of Acre, enjoined all TelexFree entities from conducting any further business operations and froze its assets.

**J.      Telexfree's Unlawful, Unfair and Deceptive Pyramid Ponzi Scheme Involving the Unregistered Sale of Securities**

161.    As detailed above, the core of the Passive Income Scheme centers on the investment of either $289.00 or $1,375.00.  A participant who invests $289.00 receives one advertisement kit and ten VoIP Programs.  A participant who invests $1,375.00 receives five advertisement kits and fifty VoIP Programs.

162.    The Direct Participant Defendants uniformally and identically represented to the Plaintiffs and the similarly situated members of the putative class that the advertisement kit enabled Promoters to generate a guaranteed return by posting pre-written advertisements, to pre-determined websites, through an automated TelexFree system.

163.    The guarantee return to Promoters in exchange for their use of the advertisement kits generated investment returns without the need for any VoIP Program sales. Posting advertisements was a deception and a sham activity intended by the Direct Participant Defendants to mislead. Posting advertisements is an effortless process that takes less than a minutes per advertisement.

164.    Promoters who initially invested $289.00 and did nothing more than place one advertisement per day were guaranteed a profit of at least $681.00 – a return in excess of 200%. A participant who initially invests $1,375.00 and places five advertisements per day was guaranteed a profit of $3,675.00. This is a return that exceeds 350%.  Additional funds were

guaranteed to Promoters via various bonus structures and recruitment commissions

165.    TelexFree participants become eligible for revenue sharing bonuses of up to 3% of the TelexFree's VoIP Program sales for recruiting multiple Promoters.

166.    TelexFree prominently highlighted one such participant, Defendant Rodrigues, as the top promoter in the world on the TelexFree website. Rodrigues, a self-proclaimed millionaire, had previously operated a similar multi-level marketing phone card fraud shuttered by the SEC in 2006.

167.    According to an investigation conducted by the United States Securities and Exchange Commission (hereinafter sometimes referred to as the "SEC"), between August 2012 and March 2014, TelexFree received slightly more than $1.3 million from the sale of approximately 26,300 VoIP Programs, while receiving more than $302 million in investments by Promoters – thus, less than one-half of one percent of total revenue during this period derived from sales of TelexFree's purported product. During this period, TelexFree promised to pay Promoters returns of over $1.1 billion – nearly a thousand times the amount of revenue derived from sales of the VoIP Programs.

168.    TelexFree founder Wanzeler could not identify the number of individuals purchasing only a VoIP Program without also becoming a participant.  Wanzeler provided wildly varied estimates when challenged to identify the number of VoIP Programs sold to non-participants.Over the same period, TelexFree had 783,771 investments of either $289.00 or $1,375.00 totaling $880,189,455.32.  Even assuming that only 50% of all participant investments were for $1,375.00, TelexFree would still owe $2,398,897,200.00 – a number that far exceeds TelexFree's reported total revenues over the same period.  This figure of almost $2.4 billion does not even include further bonuses, recruitment commissions, and revenue

sharing.

169.    TelexFree did not generate sufficient funds from sales of their phone service to pay the returns on investments that they had contracted to pay.  Instead, the funds TelexFree used to pay the purported returns on investments were the principal investment funds (membership fees) tendered by subsequent TelexFree investors.

170.    TelexFree's Contract at Section 2.6.5 (m) mandates that Promoters are not to use the term investment with respect to the registration costs. Co-Defendant and Company Counsel Attorney Gerald P. Nehra, through his affiliated companies (Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC), and under the direct supervision of Co-Defendants Richard W. Waak and Richard W. Waak Attorney at Law, PLLC provided this deceitful advice for the purpose of furthering perpetuating Defendants unlawful Pyramid Ponzi Scheme. Specifically, TelexFree's Contract at Section 2.6.5 (m) provides that the Promoter must not "use terms that distort the real meaning of products or the mechanism and functioning of multilevel marketing, including, without limitation, expressions that convey the idea of instant wealth for nothing in exchange, as well as speaking of registration costs as a 'financial investment.'  Similarly, it is expressly prohibited to use the term 'INVESTMENT' at meetings and in promotional materials in general, orally or in writing.

171.    In addition, TelexFree and the other Defendants unlawfully, willfully and knowingly used means and instrumentalities, directly and indirectly, for the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, Section 410b.

172.    TelexFree is currently under investigation for offering fraudulent and unregistered securities by running a multi-level marketing scheme.

173.    TelexFree is a marketer of telecommunications and advertising primarily, though not exclusively, targeting the hard-working Brazilian-American and Dominican-American communities. Its purported business is providing "99TelexFree" VoIP service, which costs 49.90 per month, even though TelexFree's president testified to having limited knowlede of VoIP services and never working in the telecom business. This VoIP service acts as a façade for TelexFree's actual business of recruiting new investors/promoters and paying them to place advertisements on the internet and recruit new investors/promoters, an act which of itself generates no revenue.

174.    Merrill admitted in a March, 1, 2013 press release that "We [TelexFree] pay our representatives weekly if they follow our system and advertise our service on the Internet."

175.    This scheme borrows elements from the once common phone card frauds of the mid-2000's, while supercharging its reach through an elaborate internet-marketing machine.

176.    As with all Ponzi or Pyramid Schemes, TelexFree operations are untenable without a continuous influx of new capital.

177.    The financial basis of the TelexFree scheme centers on the recruitment of additional participants and placing online advertisements – not actual sales of 99TelexFree Voice over Internet Protocol computer programs ("VoIP Program(s)").

178.    Class Members were fraudulently induced to invest in at least two other "scam" business opportunities involving the offer or sale of unregistered securities in Massachusetts 1) TelexFree's passive income scheme, and 2) an offer to invest in TelexFree's hotel program.

179.    Using technology borrowed from Disk A Vontade Telefonia, Ltda ("Disk A

Vontade"), TelexFree rebranded Disc A Vontade's VoIP Program, offering it for a flat monthly fee of $49.90.

180.    Unlike Disk A Vontade operations, however, TelexFree coupled the VoIP Program with the wildly lucrative and fraudulent scheme (the "Passive Income Scheme").

181.    The core of the Passive Income Scheme centers on the investment of either $289.00 or $1,375.00.

182.    The "AdCentral" program costs $289.00 (plus a fifty dollar membership), for a one year contract. Promoters under this program received ten one-month pacjages of the VoIP service and had to place one inernet advertisement a day. For every week where they placed these advertisements, they received one addition VoIP package and were promised a weekly payment of $20 ($1040 for the entire year), a 207% return on the original investment.

183.    The "AdCentral Family" program costs $1375.00 (plus the $50 membership fee) for a one-year contract. Promoters in this program received fifty one-month VoIP pckages and had to post five advertisements on the internet daily. Those who posted the advertisements received a five addition VoIP packages and a promised weekly payment of $100 ($5,200 over the year), an annual return of 265%.

184.    The TelexFree advertisement kit enables participants to generate a return by posting pre-written advertisements, to pre-determined websites, through an automated TelexFree system.

185.    A participant's daily use of the advertisement kits generates investment returns with no VoIP Program sales.

186.    As testified to, posting advertisements is an effortless process that takes only a few minutes per advertisement.

187.    Many participants pay third parties to post advertisements – completely outsourcing any required work at a minimal cost.

188.    By merely posting one advertisement each day of the week, the TelexFree participant receives an additional VoIP Program.

189.    The participant can sell the additional VoIP Programs to TelexFree for $20.00.

190.    The Passive Income Scheme generates further returns for participants through various bonus structures and recruitment commissions.  TelexFree tailors each of the additional income streams to incentivize recruitment.

191.    Promoters were promised a one-time bonus of $20 for each recruited "AdCentral" member and $100 for each recruited "AdCentral Family" member. True to a pyramid scheme, promoters who recruited two additional promoters were promised a bonus of $20 for each direct and indirect participant in their "network", up to a maximum of $440. Under a "Team Builder Plan", AdCentral Family promoters who recruited ten other AdCentra Family members, each of whom sold five VoIp packages (to themselves or others), were promised 2% of TelexFree's net billing in the following month, up to $39,600.

192.    Further, promoters were promised commissions based on sales of the VoIP service – 90% for the initial VoIP package sold to a customer he/she recruited,10% monthly for direct participants who renewed the service, and 2% monthly for each indirect participants who renewed their service down to the sixth level of the promoter's network. Promoters were also promised 2% of *all* VoIP package sales by direct or indirect participants in their network down to the sixth level of their network.

193.    Hidden among TelexFree's bonus structure and recruitment commissions is that TelexFree participants may self-qualify for sales and commissions.

194.    As testified by participants, a participant may invest in more than one advertisement kit and purchase the VoIP Program to earn bonuses. A participant may purchase a VoIP Program, never use the program, and still qualify for additional income. And therefore without ever selling any VoIP Program, the participant receives a return far over the 200-250% guaranteed return.

195.    TelexFree's revenue from sales of VoIP Programs sales alone is inadequate to satisfy participant returns.  During telexfree's scheme, revenue from sales of VoIP Programs has constituted only a tiny fraction of TelexFree's revenue and funds promised to Promoters.

196.    According to an investigation conducted by the United States Securities and Exchange Commission (sometimes referred to as the "SEC"), between August 2012 and March 2014, TelexFree received slightly more than $1.3 million from the sale of approximately 26,300 VoIP Programs, while receiving more than $302 million in investments by Promoters – less than one-half of one percent of total revenue during this period derived from sales of TelexFree's purported product.

197.    According to the SEC, during this period, TelexFree promised to pay Promoters returns of over $1.1 billion – nearly a thousand times the revenue derived from sales of the VoIP Programs – an amount TelexFree has not produced in revenue.

198.    According to an investigation by the Securities Division of the Office of the Secretary of the Commonwealth of Massachusetts (sometimes referred to as the "SOC") in 2012 and 2013, TelexFree identified 4,845,576 VoIP Program transactions totaling $238,395,353.80.

199.    Net revenue received by TelexFree from VoIP Program sales was significantly less due to substantial commission payments.

200.     Importantly, TelexFree founder Wanzeler could not identify the number of individuals purchasing only a VoIP Program without also becoming a participant.

201.     Wanzeler provided wildly varied estimates when challenged to identify the number of VoIP Programs sold to non-participants.

202.     Over the same period, TelexFree had 783,771 investments of either $289.00 or $1,375.00 totaling $880,189,455.32.

203.     Assuming that each participant invested only $289.00 and did only post one advertisement per day, TelexFree owed participants $799,446,420.00.  Alternatively, if each participant invested only $1,375.00 and did only post five advertisements per day, TelexFree owed $3,997,232,100.00 to its participants.

204.     According to data provided by TelexFree, $1,375.00 investments accounted for 88% of transactions through Massachusetts-based participants.

205.     Even assuming that only 50% of all participant investments were for $1,375.00, TelexFree would still owe $2,398,897,200.00 – a number that far exceeds TelexFree's reported total revenues over the same period.  This figure of almost $2.4 billion does not even include further bonuses, recruitment commissions, and revenue sharing.

206.     Including these additional payments would create an even greater disparity between the VoIP Program revenue and guaranteed money paid out of the Passive Income Scheme to participants.

207.     TelexFree did not generate sufficient funds from sales of their phone service to pay the returns on investments they had contracted to pay.  Instead, the funds TelexFree used to pay the purported returns on investments were the principal investment funds (membership fees) tendered by subsequent TelexFree investors.

208.     Although upon the advice of their legal counsels, TelexFree referred to the members of the putative class as "*Associates*," "*Members,*" and "*Promoters*," Plaintiffs Martin and Valentim and all other members of the putative class are "Investors" under federal and state securities law.

209.     TelexFree's Contract at Section 2.6.5 (m) mandates that Promoters are not to use the term investment regarding the registration costs.

210.     Co-Defendant and Company Counsel Attorney Gerald P. Nehra, through his affiliated companies (Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC), and under the direct supervision of Co-Defendants Richard W. Waak and Richard W. Waak Attorney at Law, PLLC provided this deceitful advice to further perpetuating Defendants unlawful, unfair, and deceptive Pyramid Ponzi Scheme.

211.     Specifically, TelexFree's Contract at Section 2.6.5 (m) provides that the Promoter must not "use terms that distort the real meaning of products or the mechanism and functioning of multilevel marketing, including, without limitation, expressions that convey the idea of instant wealth for nothing in exchange, as well as speaking of registration costs as a 'financial investment.'  Similarly, it is expressly prohibited to use the term 'INVESTMENT' at meetings and in promotional materials in general, orally or in writing.

212.     However, promotional materials posted online by TelexFree specifically referred to income received by Promoters for placing ads as part of the AdCentral Packages as "*passive income*."[25]

213.     Troublingly, TelexFree allowed certain participants to join the scheme despite

---

[25] See TelexFree Promotional Advertisements, attached herewith as Exhibit 7.

prior run-ins with the law.

214.     TelexFree prominently highlighted one such participant, Defendant Rodrigues, as the top promoter in the world on the TelexFree website.

215.     Rodrigues, a self-proclaimed millionaire, had previously operated a similar multi-level marketing phone card fraud shuttered by the SEC in 2006.

216.     To drum up interest in recruiting, TelexFree held extravaganzas complete with a rock concert atmosphere and wild cheering, including the "wave."

217.     Until recently, the TelexFree website and TelexFree presentations included pictures of cash and luxury property.

218.     In one such presentation, TelexFree touted the Passive Income Scheme as "the opportunity of a lifetime."

219.     Telexfree posted other promotional videos on websites such as YouTube to persuade others to invest in their operation.

220.     Through such fantasies, reserved only for those at the top of the Passive Income Scheme, TelexFree induced investments drawn from participants' earnest earnings and savings.

**K.     Telexfree's Offer and Sale of Unregistered Investments in Best Western Hotel**

221.     Besides the Passive Income Scheme hereinbefore described, TelexFree, through Ympactus and Costa, offered an investment in a Best Western Hotel.

222.     As described by TelexFree's president, the Best Western Hotel opportunity was an important marketing tool to bolster TelexFree credibility worldwide.

223.     TelexFree management facilitated the offer of the Best Western Hotel opportunity through including the "Hotel Best Western Opportunity" on the front page of the TelexFree website accessible in the Commonwealth.

224. Through a prominently placed website banner and video on the TelexFree website, TelexFree presented this Best Western Hotel investment opportunity as having a guaranteed yearly return of over 8%.

225. TelexFree never registered this security offering with the SEC or released any prospectus or investor disclosure.

226. Crosby stated in an April, 2013 internet video that "This company has a joint venture with Best Western", but in actuality TelexFree has no relationship with Best Western.

227. The closest discernable link between TelexFree and Best Western is Ympctus Comercial's promotional agreement with a Brazilian company partnering with Best Western on a new hotel. This establishes no business relationship with TelexFree.

228. The Best Western Hotel opportunity video remained on the United States-based TelexFree website for months although the president of Best Western knew of the video and requested TelexFree's website staff to remove the video.

**L.      Investigation Of, and Injunctions Against, Telexfree's Brazilian Operations in Brazil was Notice of Scam**

229. In January, 2013, the Brazilian Bureau of Consumer Protection (known as Procon), began an investigation into TelexFree.  In its January 11, 2013 press release, Procon indicated that it had *"detected evidence of crimes":*

> The investigation initiated by civil prosecution of Consumer Protection (no. 01/2013) shows several controversial issues and possible crimes that put consumers at risk in time to accept that kind of deal.
>
> Among the possibilities, there is a breach in the Federal Law No. 1.521/51, art. 2, according to which it is a crime:
>
> "Obtaining or attempting to obtain illicit gains at the expense of the people or of undetermined number of people through speculation or processes fraudulent ('snowball', 'chains', 'pichardismo' and any other equivalent)" including Ponzi pyramid".

> There is also the possible violation of the Code of Consumer Protection (CDC), with false advertising, failure of product information and company, abuse of weakness or ignorance of consumers and conditions unreasonable disadvantage, among others.[26]

230.    Procon subsequently initiated an official complaint and notified the "*State Prosecutors Office, the Minister of Finance and the Federal Police.*"[27]  The Ministry of Finance, after its investigation, declared that:

> The TelexFree business of selling packages of internet telephony (VoIP, its acronym in English), is not sustainable and suggests a Ponzi scheme, which is a crime against the popular economy.
> That is the conclusion of the Secretariat for Economic Monitoring of the Ministry of Finance (Seae / MF) in a statement on Thursday (14).[28]

231.    As the matter processed through the Brazilian Court System, the Ministry of Finance was ordered to not issue further statements about the matter.  In a blatantly misleading and deceptive act, TelexFree circulated through its affiliates the following misrepresentation of the order:

> *It's official!  The investigation on TelexFree has been absolved of what Behind MLM has researched and posted.*[29]

232.    On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "*a stop to TelexFree's business operations, including the registration of new affiliate investors,*

---

[26] "*TelexFree under criminal investigation in Brazil*", Behind MLM (Feb. 15, 2013), http://behindmlm.com/companies/telexfree-under-criminal-investigation-in-brazil/, attached herewith as Exhibit 8.

[27] "*Ministry of Finance: TelexFree 'not sustainable'*" Behind MLM (Mar. 17, 2013), http://behindmlm.com/companies/ministry-of-finance-telexfree-not-sustainable/, attached herewith as Exhibit 9.

[28] *Id.*

[29] "*Brazilian Court suspends TelexFree operations*", Behind MLM (June 20, 2013), http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/, attached herewith as Exhibit 10.

*acceptance of new investments and paying any returns owed on existing affiliate investments.*"[30]

233.    In addition, following a court order in Brazil by Judge Borges for Telexfree to turn over "data relating to the registration and operation of the accounts of each of the affiliates, including twelve months of retroactive data", Telexfree claimed they had no access to registrations and tranfers accounts of the promoters of the company. This claim is in direct contention with an internet video in which Costa is surrounded by stacks of books which he claims hold the requested affiliate data. [31]

## M.    Collapse of Telexfree's United States' Operations

234.    Over two years of operations, TelexFree has employed multiple financial accounts, including domestic and international bank accounts and various online payment processors, to facilitate the fraudulent offer or sale of securities in the Commonwealth of Massachusetts.

235.    Almost all financial institutions have eventually terminated their relationship with TelexFree as their operations have become a risk that financial institutions are no longer willing to bear.

236.    Recently, frantic emails between TelexFree management and financial institutions paint an entirely bleak picture of continuing TelexFree financial operations.

237.    As described by one financial institution, "[n]o US Bank or Processor . . . will accept your [TelexFree] business given that you are on month five of the Visa Chargeback monitoring program.  You are one of only three merchants in the USA on month five so you

---

[30] *Id.*
[31] *See* "TelexFree claim no affiliate data, fined again" Behind MLM (Jan. 1, 2014) (explaining Judge Borges' request and Telexfree's contentious response)

are a real hot-potato as they say."[32]

238.    On March 9, 2014, TelexFree changed its compensation plan, requiring

Promoters to sell its VoIP product to qualify for the payments that TelexFree had previously

promised to pay them.

239.    A central component of the new changes affect the ease of participant

withdrawals.

240.    TelexFree participants can no longer withdraw money, even money already

"earned," without making a specified number of retail sales and recruiting several new

investors.

241.    Following these changes, numerous TelexFree participants frantically contacted

the Office of the Secretary of the Commonwealth, correctly suspecting these changes were the

harbinger of TelexFree's collapse.  The changes also generated a storm of protests from

promoter who could not recover their money.

242.    Not only is it now more difficult to withdraw money from TelexFree, TelexFree

has also switched its compensation plan from one that pays participants in dollars to one that

operates on TelexFree "credits," which are nothing more than IOUs.

243.    On April 1, 2014, dozens of Promoters descended upon TelexFree's

Marlborough, Massachusetts office to protest this change and attempt to regain access to their

money.  Local media covering interviewed one Promoter who admitted that the VoIP service is

"almost impossible to sell".[33]

---

[32] *Id.*
[33] Scott O'Connell, "*Upset customers look for answers at TelexFREE offices*", Wicked Local-Dennis (April 1, 2014 (updated April 17, 2014)),
http://dennis.wickedlocal.com/article/20140401/NEWS/140409503?sect=More&map=0.

244.     On April 14, 2014, Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial abruptly sought bankruptcy protection in Nevada under Chapter 11, admitting that they cannot meet their obligations from VoIP revenues and seeking authority to reject all its current obligations to promoters.

**N.     Events Since Telexfree's Bankruptcy Filing**

245.     In furtherance of their unlawful enterprise, TelexFree mailed fraudulent and inaccurate 1099 (Miscellaneous Income) forms to investors, possibly to create the illusion they had made payments to investors when no such payments were made.

246.     The 1099 forms were provided long after the mandated January 31, 2014 deadline, and some after the April 15, 2014 filing deadline.

247.     TelexFree falsely represented that investors had received income they had not received.

248.     TelexFree's former officers or employees stated to the TelexFree bankruptcy transition team that under the pre-March 2014 standard form contract, TelexFree owes its promoters over $5 billion dollars.

249.     The other Defendants knew that TelexFree was an illegal Pyramid Ponzi Scheme which involved the illegal sale of securities, but continued to aid, abet and further such illegal activities. Despite the foregoing knowledge, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

250.     On April 15, 2014, the Securities Division of the Office of the Secretary of the Commonwealth of Massachusetts (sometimes referred to as the "SOC") filed an Administrative

Complaint against TelexFree, Inc. and TelexFree, LLC,  alleging violations of the

Massachusetts Uniform Securities Act, MASS. GEN. LAWS, ch. 110A.

251.    The SOC is seeking injunctions and orders requiring TelexFree, Inc. and

TelexFree, LLC to cease and desist from further conduct violating Massachusetts securities

laws and regulations, to provide an accounting of all proceeds received because of the

TelexFree's fraud, to provide restitution to Investors for losses attributable to the fraud

operations, and to disgorge all profits.

252.    Also on April 15, 2014, the U.S. Securities and Exchange Commission

(sometimes referred to as the "SEC") filed a civil Complaint and Jury Demand against

TelexFree, Inc. and TelexFree, LLC and Merrill, Wanzeler, Labriola, Craft, Rodrigues, De La

Rosa, Crosby, and Sloan, alleging violations of the Securities Act of 1933, the Securities

Exchange Act of 1934, and SEC Regulations.371. The SEC requested and was granted a

preliminary injunction and an order freezing assets of TelexFree.  The SEC is also seeking

disgorgement of profits and additional civil penalties.

253.    On Tuesday, April 15, 2014, the Federal Bureau of Investigation (sometimes

referred to as the "FBI") and the U.S. Department of Homeland Security (sometimes referred to

as the "DHS") conducted a raid of TelexFree's Marlborough, Massachusetts office.

254.    During this raid by the FBI and DHS, the Defendant, Craft, was caught by

federal agents attempting to leave the building with a laptop and approximately $38 million in

cashier's checks in a bag, to abscond with ill-gotten funds.

256.    When questioned, Craft misrepresented to the federal agents he was merely a

"consultant", and claimed that the checks and computer were "personal". On or about May 1st,

Montana Securities Commissioner filed cease and desist order against TelexFree.

257.    The following day, the Nevada Bankruptcy Court, on Motion by the SEC, transferred the matter to the Federal District Court in Massachusetts, Central Division. TelexFree is now active and operating their Pyramid Ponzi Scheme in Canada, with offices in Richmond, British Columbia, but is being closely monitored by the B.C. Securities Commission.

258.    During hearings, conducted on May 2, 2014, William H. Runge, III, Chief Restructuring Officer of TelexFree, estimated that, as of TelexFree's Bankruptcy filing, TelexFree had assets of $31 million in its bank accounts, $28 million in brokerage accounts, and nearly $30 million held by payment processing companies.

**O.    Telexfree's Directors, Officers, and Owners Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

259.    Defendants Merrill, Wanzeler, Labriola, Craft and Costa (sometimes collectively as the "Defendant Officers" or "TelexFree's Management") were responsible for the control and operation of TelexFree and its affiliated entities.

260.    TelexFree's Management not only controlled the activities and operations of TelexFree, but also knowingly and willfully conspired to perpetrate, and did perpetrate, the TelexFree Pyramid Ponzi Scheme with full awareness of its fraudulent and illegal nature.

261.    Defendant Merrill served as the President, Secretary, and Director of TelexFree, Inc., a Manager of TelexFree, LLC, President, Secretary and Director of TelexFree Financial, General Partner of TelexElectric, and President, Secretary and Director of Telex Mobile Holdings

262.    In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Merrill exercised significant control over TelexFree's business operations.

52

263. More particularly, Merrill exercised significant control over the TelexFree Pyramid Ponzi Scheme.

264. Defendant Merrill has appeared in videos posted to the internet, in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.

265. As of March 28, 2014, the TelexFree website included a biography of Merrill, which stated that Merrill was a 1985 graduate of Westfield State University in economics.

266. Also, as of March 28, 2013, the TelexFree website stated that Merrill is "well versed in one of the new technologies of the era (VoIP) [sic]."

267. As of April 28, 2014, the TelexFree Canadian website continued to state that Merrill is a 1985 graduate of Westfield State University in economics and "[k]nowledgeable about a new era of technology (VOIP)."

268. According to testimony obtained by the SOC, Merrill attended Westfield State University for a mere two years, without either receiving a degree or declaring a major.

269. In direct contravention to the representations of the TelexFree websites, Merrill testified to SOC he had only a basic understanding of VoIP technology.

270. Defendant Wanzeler served as Treasurer and a Director of TelexFree, Inc., a Manager of TelexFree, LLC, Vice President, Treasurer, and a Director of TelexFree Financial, General Partner of TelexElectric and Treasurer and Director of Telex Mobile Holdings.

271. According to corporate filings on record with SOC, , Wanzeler has also served as the Chief Executive Officer of TelexFree, Inc.

272. In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Wanzeler exercised significant control over TelexFree's business operations.

273.    More particularly, Wanzeler exercised significant control over the TelexFree Pyramid Ponzi Scheme.

274.    Defendant Wanzeler has also participated in marketing TelexFree to potential investors, appearing in videos posted to the Internet in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.407.  Among the other material misrepresentations made by TelexFree and its Defendant Officers include a website photograph of Merrill standing in front of a building in Marlborough, Massachusetts, with the caption "*Mr. Merrill in front of the headquarters of TelexFree in the USA*", when they only occupied one suite which they shared with 28 other companies. Merrill further misrepresented, in a press release on March 21, 2014, that TelexFree had "*been in VoIP telecommunications for more than a decade.*"

275.    Defendant Labriola, served as the International Marketing Director for TelexFree, Inc.

276.    Labriola was one of the original Directors of Common Cents Communications, Inc., and at all material times exercised significant control over TelexFree's business operations and the operations of its interrelated companies.

277.    Defendant Labriola has also appeared in several videos promoting TelexFree posted on the internet, and has acted as TelexFree's spokesman to Investors during post-bankruptcy petition conference calls.

278.    As a Director of TelexFree, Inc., Defendant Labriola, has exercised significant control over the TelexFree Pyramid Ponzi Scheme.

279.    As International Marketing Director for TelexFree, Inc., Labriola has also actively and knowingly perpetrated the TelexFree fraud through the dissemination of false and misleading advertising and marketing communications.

280.    Defendant Craft, also known as Joe H. Craft, has been a certified public accountant and served as the Chief Financial Officer ("CFO") of Telex Free, Inc and TelexFree, LLC.

281.    In his capacity as CFO of TelexFree, Craft has been responsible for preparing or approving TelexFree's financial statements, overseeing TelexFree's accounting methods and records, and otherwise exercising significant supervision and control over TelexFree.

282.    On April 23, 2013, in response to a request for a profit-and-loss statement issued by the SOC, TelexFree produced a document purporting to be TelexFree's 2012 profit-and-loss statement.[34]

283.    TelexFree did not make use of usual and accepted Multi Level marketing accounting practices. For example they did not separate out income generated by sales of VoIP from income generated by other means.

284.    On February 5, 2014, the SOC requested a second profit-and-loss statement from TelexFree for 2012, which TelexFree produced on February 26, 2014.[35]

285.    A comparison of these two profit-and-loss statements – each purporting to be TelexFree's profit-and-loss statement for 2012 – reveals massive discrepancies.

286.    The first statement provided by TelexFree lists Total Income for 2012 at $1,864,939.70, while the second lists Total Income for 2012 at $2,834,835.70.[36]

287.    As further examples, Agent Commission is listed at $520,582.95 in the first, versus $2,105,925.61 in the second; Total Expenses are listed as $784,899.22 in the first, versus $2,333,893.09 in the second; Net Operating Income is listed as $1,080,040.48 in the first,

---

[34] *See* Administrative Complaint of instituted by the Commonwealth of Massachusetts, Office of the Secretary of the Commonwealth Securities Division, Docket No. 2014-0004, page 29.
[35] *Id.*
[36] *Id.*

versus \$478,251.56 in the second; and Net Income is listed as \$1,066,313.39 in the first, versus \$477,652.23 in the second.[37]

288.    The existence of duplicative accounting records containing egregious discrepancies is clear indicia of TelexFree's falsification of accounting records and failure to adhere to Generally Accepted Accounting Principles ("GAAP").

289.    As Chief Financial Officer for TelexFree, Inc. and TelexFree, LLC, and a certified public accountant, Defendant Craft, knowingly perpetrated the TelexFree fraud by :

    a.    Overseeing TelexFree's creation of falsified accounting records;

    b.    Failing to ensure that GAAP accounting methods were adopted and adhered to;

    c.    Fraudulently certifying TelexFree's business operations and accounting practices as good and lawful, despite actual knowledge of their unlawful and illegitimate nature;

    d.    Concealing that the AdCentral Packages purveyed by TelexFree were securities; and

    e.    Concealing and absconding with investor assets.

290.    Defendant Costa, was listed as Manager of TelexFree, LLC with the Massachusetts Secretary of State Corporations Division.

291.    Costa is one of the original founders of TelexFree.

292.    Costa was involved in the day-to-day management and oversight of TelexFree and was actively involved in and managed its Brazilian operations.

293.    Costa has appeared on numerous websites and videos posted on the Internet promoting TelexFree and touting its huge financial return.

294.    Costa was an outspoken advocate against the Brazilian Court's decision to

[37] *Id.*

56

enjoin TelexFree's Brazilian activities, and publicly supported TelexFree's illegal and corrupt activities.

295.    Costa is videoed displaying an Insurance Notification representing that it was proof of coverage for investors' returns; however, in actuality the document was a notification denying coverage.[38]

**P.    Other Businesses Associated with TelexFree's Directors, Officers, and Owners Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

296. Left Intentionally Blank/To be Supplemented

**Q.    TelexFree's Insider Promoters including Insider Promoter Does 1-66 Knowingly Perpetrated the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

297.    In addition to the other acts detailed herein, the Insider promoters attended invite only meetings at TelexFree's Masschusetts headquarters. At those meetings they conspired with the other Direct Participant defendants to continue the operation of TelexFree's illegal pyramid ponzi scheme.

**R.    Telexfree's Attorneys Aided, Abetted, and Played an Integral Role in the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

298.    Defendants Gerald P. Nehra and Richard W. Waak, with the entities Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC (sometimes collectively referred to as "Attorney Defendants") are self-proclaimed multi-level marketing ("MLM") specialist attorneys.[39]

---

[38] See http://www.youtube.com/watch?v=q2A2IsAPd0I.
[39] "*Gerry Nehra gives 'legal blessing' to TelexFree*," Behind MLM (Aug. 2, 2013), http://behindmlm.com/companies/telexfree/gerry-nehra-gives-legal-blessing-to-telexfree/.  The full length tape of his legal opinions and presentation can be found at: http://www.psquad.com/gerald-nehra.html (herein, "Nehra Endorsement") ("*After I left Amway in 1991, I had a very brief period as the vice-president and general counsel for Fuller Brush. Fuller Brush did not make it in attempting to convert from direct selling to multi-level direct*

299.     During telexfree's fraudulent scheme, the above-named Attorney Defendants acted as legal counsel to TelexFree.

300.     Attorney Nehra had previously acted as counsel to other multi-level marketing firms, which were forced, closed by federal and/or state authorities due to fraudulent pyramid and Ponzi schemes, including ZeekRewards and AdSurfDaily. [40]

301.      During the investigation of the AdSurfDaily scheme, Attorney Nehra filed an affidavit in court representing that AdSurfDaily was "*not a Ponzi Scheme.*"[41]  Subsequently, in 2008, AdSurfDaily was forced to cease operations by federal authorities after being found to be a Ponzi scheme; a fact later admitted to by its principal.[42]

302.     Attorney Nehra also previously served in an advisory capacity to ZeekRewards. ZeekRewards was later found to be an unlawful Ponzi scheme and was shut down by federal authorities.

303.     Attorney Nehra's extensive experience in multi-level marketing, and particularly his involvement with the Ponzi schemes involving AdSurfDaily and Zeek Rewards, armed him with the knowledge of what constitutes violations of United States securities law.   Attorney Nehra was well aware that the use of semantics and obscured phraseology to obfuscate securities laws fails to legitimize TelexFree's illegal Pyramid Ponzi Scheme.

304.     Attorney Waak also claims to have over thirty years of experience in counseling MLM and direct-selling enterprises.[43]

───────────────── (continued)

*selling.  And when that job wasn't going to work out I ended up returning from Colorado back to Michigan and opening up a private law practice.  Since 1992, I have practiced law exclusively in multi-level direct selling law.  That is all that I do.*")

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See* http://www.mlmatty.com/meet-mlm-attorneys/.

305.     Attorney Waak claims to have managed the legal defense of multiple class action lawsuits involving claims for "*pyramiding, securities fraud, false advertising and civil RICO.*"

306.     Attorney Nehra and Attorney Waak are together the general partners of the Law Offices of Nehra and Waak.

307.     On the website of the Law Offices of Nerha and Waak, Defendant Attorneys Nehra and Waak claim to specialize in counseling "*domestic and foreign companies operating MLM (multi-level marketing) businesses in the United States.*"[44]

308.     Also, on the website of the Law Offices of Nerha and Waak, Attorneys Nehra and Waak boldly boast that "*No Company that retained this firm BEFORE LAUNCH has been shut down by a regulator.*"[45]

309.     As general partners of the Law Offices of Nehra and Waak, Attorney Nehra and Attorney Waak are jointly and severally liable for torts and obligations of the firm.

310.     While the Law Offices of Nehra and Waak provided legal counsel to TelexFree, Attorney Waak was Principal Attorney of the law firm.

311.     Attorney Waak, as Principal Attorney of the Law Offices of Nehra and Waak, was charged with oversight of the daily activities of the law firm.

312.     Attorneys Nehra and Waak also maintained the Defendant Professional Limited Liability Companies, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, which, upon information and belief, also provided legal and counseling services to TelexFree.

313.     Among the Attorney Defendants, and during telexfree's scheme, there was no

---

[44] *Id.*
[45] *Id.*

clear distinction among the services provided to TelexFree by the Law Offices of Nehra and Waak, the individual Attorney Defendants, and their respective Professional Limited Liability Companies.

314.    The Attorney Defendants' role and involvement in the TelexFree Pyramid Ponzi Scheme exceeded merely providing legal counsel since they knowingly acted to further and perpetuate TelexFree's illegal Pyramid Ponzi Scheme, which caused Plaintiffs Martin and Valentim and the similarly situated Putative class members to suffer economic loss.

315.    The Attorney Defendants had actual knowledge that the TelexFree Business Model was a fraudulent Pyramid Ponzi Scheme.

316.    Seeking to profit from TelexFree's exploitation of the members of the putative class, Defendant Gerald P. Nehra drew upon his prior experience to aid, abet and play an integral part in TelexFree's unlawful, unfair and deceptive acts and practices during times relevant to this complaint.

317.    Attorney Nehra counseled TelexFree on methods to evade United States securities laws intended to offer, in part, protection from Pyramid Ponzi schemes; all to enrich himself financially and serve his own selfish interests.

318.    Attorney Nehra further encouraged TelexFree Investors to unknowingly participate in the evasion of federal and state securities laws.

319.    Defendant Nehra accomplished this by representing that his extensive experience as an MLM expert and his thorough research of TelexFree's business model allowed him to form a legal opinion that TelexFree was a legitimate business.

320.    In making this professional opinion Defendant Nehra misrepresented TelexFree as a legitimate business concern.

321.   For instance, by instructing Investors to avoid using the terms "investment" regarding AdCentral Package (See TelexFree Contract, Paragraph 2.6.5(m)), he attempted to conceal, and encouraged others to conceal, that TelexFree was involved in the sale of securities, and attempted to strip Investors of the rights afforded them by federal and state securities laws.

322.   In advising TelexFree Investors to act to avoid the protections offered by federal and state securities laws, Attorney Nehra never once advised the putative class member TelexFree Investors so acting presented a risk to them, including the risk of participating in an unlawful scheme.

323.   In advising TelexFree Investors to act to avoid the protections offered by federal and state securities laws, Attorney Nehra never once advised the putative class member TelexFree Investors so acting was against their own interests or that it better served TelexFree and himself.

324.   Attorney Nehra's acts of aiding, abetting and playing an integral part in TelexFree's unlawful, unfair and deceptive acts and practices exceed the scope of zealously representing TelexFree.

325.   Defendant Gerald Nehra contributed in an indispensable way to TelexFree's continued unlawful operation in the United States because, as a duly licensed member of the bar, he publicly stated to Investors that, in his professional opinion, TelexFree's business model and operations complied with federal and state laws.

326.   TelexFree and its Officers knowingly used Attorney Nehra's false legal opinions and misrepresentations as a marketing tool to unfairly and deceptively further and advance their illegal Pyramid Ponzi Scheme.

327.   Attorney Nehra knew that his legal opinions were false, and that his representations would be used by TelexFree as a marketing tool to further and advance their business model and illegal activities.

328.   Attorney Nehra's opinions were packaged and promoted as part of TelexFree's total "post Brazilian shut down package" to the members of the putative class.

329.   As described in greater detail throughout, in the early spring of 2013 TelexFree Brazil was found to be an illegal pyramid and Ponzi scheme.

330.   TelexFree suffered a financial crisis when the funds of hundreds of thousands of Brazilian affiliate investors were frozen in company accounts by order of the Brazilian Court.

331.   To keep its Pyramid Ponzi Scheme ongoing, TelexFree needed a constant influx of new investor cash.

332.   In spring 2013, TelexFree was forced to focus on new markets, including new Investors from the United States and Canada, because their Brazilian operation had been shuttered and all Brazilian assets were frozen.  To enhance the credibility and marketability of their United States operation, TelexFree employed the Attorney Defendants to make their illegal and fraudulent methods, operation and business plan appear legitimate.

333.   On the weekend of July 26th and 27, 2013, TelexFree held an event, which they dubbed a "super weekend," in Newport Beach, California.  The focus of TelexFree's "super weekend" event included considerable efforts intended to reassure Investors that its United States operations and program were legitimate, lawful and worth putting their money behind.

334.   Although TelexFree's Brazilian bank accounts were frozen and all their Brazilian recruiting and Return on Investment payments had been suspended by court order in their largest affiliate market, Attorney Nehra advised attendees that the shut-down in Brazil

would not affect TelexFree's U.S. operations.

335.    At this "super weekend" event, Attorney Nehra spoke at length to attending investors, assuring them of the legality of TelexFree's operation stating: "*It is legally designed…you are on very solid legal ground,*" and stating that TelexFree's operation had been "*vetted by the Nehra and Waak law firm.*"[46]

336.    When asked by a concerned affiliate about the injunction granted against the company, Attorney Nehra first deflected its relevance by stating:  "*Okay, I am the MLM specialist and attorney for TelexFree in the United States only.  So I gotta duck the question.*"[47]

337.    Attorney Nehra left no doubt he and his firm acted as legal counsel to TelexFree to assist them in insuring their U.S. operations were lawfully conducted, knowing that these operations were nothing more than an illegal Pyramid Ponzi Scheme.

338.    Although Attorney Nehra emphatically assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate and lawful, he had actual knowledge that TelexFree's operation was unlawful and illegitimate.

339.    At all times material, Attorney Nehra assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate, although he had actual knowledge that TelexFree Multilevel Marketing Network "*Partnerships*"[48] involving

---

[46] "*Gerry Nehra gives 'legal blessing' to TelexFree,*" Behind MLM (Aug. 2, 2013), http://behindmlm.com/companies/telexfree/gerry-nehra-gives-legal-blessing-to-telexfree/.  The full length tape of his legal opinions and presentation can be found at: http://www.psquad.com/gerald-nehra.html (herein, "Nehra Endorsement")

[47] *Id,* See Nehra Endorsement, *supra,* at 24:20.

[48] Paragraph 2.2.1 of the standard TelexFree Contract states "*Synthesis of the legal relationship:*
*The user, by accessing the website of TELEXFREE.COM can become a member through payment of the respective fee, which will provide access to the TelexFree Multilevel Marketing network for the period of one year, without extension or renewal.  At this stage, the member is called a PARTNER.  The PARTNER will have the right to acquire, at an exclusive discount, products that are offered on the website www.telexfree.com, with the principal VOIP*

63

TelexFree's AdCentral marketing packages were unregistered securities.  Attorney Nehra even advised on how to unlawfully circumvent federal and state securities laws.

340.    In addition Attorney Nehra assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate and lawful, even though Attorney Nehra had knowledge of the ruling of the Brazilian Court and knowledge of and access to TelexFree's United States operations and their composition.

341.    More particularly, Attorney Nehra knew that:

    a.  TelexFree used the exact same business model in Brazil as they do in the United States and throughout the world;

    b.  The Brazilian court had made a finding of fraud and that TelexFree's United States operations and composition was an unlawful venture;

    c.  The Brazilian court described Telex business operations in terms of the quintessential pyramid scheme after TelexFree's own lawyers unwittingly admitted as much;

    d.  TelexFree's lawyer Djacir Falcão stated to the Brazilian court that if the injunction continues the company may enter into bankruptcy:  "*Running the company really becomes difficult because of the court decision, so we will appeal,*" said Falcão[49];

_____ (continued)
*telephony accounts called 99TELEXFREE.  The PARTNER, upon acquiring them in the form of a kit (ADCENTRAL or FAMILY kit) assumes the title of PROMOTER and, as such, receives a space on the site www.telexfree.com to promote the products/services that he has acquired.  He also receives training and access to materials also made available on the TELEXFREE website so that he can undertake to promote the latter and avail himself of the opportunity to be a PARTNER and PROMOTER to others in his circle of relationships.  All activities are performed by the PARTNER/PROMOTER without any employment relationship, and they are able individually to manage the team and the resources it seeks to make available for such purpose, of their own free will.  For the promotion of products/services he will receive a bonus in direct proportion to his results, based on the levels explained in a separate section in these GENERAL REGULATIONS.*

    *He must obey all the clauses of these GENERAL REGULATIONS so that the name of TELEXFREE and the juridical persons associated with it remain unblemished.*"
[49] Upon information and belief based upon quote in the newspaper Rio Branco, Tribune da Bahia so reported.

e.   Falcão tried to appeal to the Brazilian judges because "*should the company spend a few more days being prohibited from signing up new investors, they would have no money to pay the old ones*;"

f.   A Brazilian judge rejected this argument and denied TelexFree's injunction appeal;

g.   TelexFree's other appeals were rejected by the Brazilian courts;

h.   One Brazilian judge remarked that the issue is that the earnings will be exhausted when the main source of revenue of the group (new affiliate registrations) stops;

i.   The above scenario is typically the result of a pyramid scheme;

j.   Judge Samoel Evangelista, 2nd Civil Chamber of the Court of Acre (TJ-AC), entered an order to keep the TelexFree funds frozen, to block future payments to TelexFree in Brazil and to enjoin TelexFree from signing on new investors in Brazil;

k.   According to Brazilian Judge Thais Kalil, how TelexFree earnings are paid out was advantageous to the prosecutor's argument, in that adding publishers to the network is of more importance than trying to sell the VoIP product;

l.   Judge Thais Kalil also wrote that "*(t)he issue is that the earnings will be exhausted when the main source of revenue of the group (new affiliate registrations) stops.  Many (affiliates) do not even have the opportunity to recover their initial investment (minimum U.S. $339) and this is detrimental*."

342.   Defendant Nehra's own comments clarify that he knew that TelexFree was an unlawful pyramid Ponzi scheme.

343.   Defendant Nehra knew to his providing legal opinions and counsel at the request of TelexFree that TelexFree's conduct constituted a breach of duty to its Investors.

344.    Defendant Nehra knew to his providing legal opinions and counsel at the request of TelexFree that his role should give substantial assistance or encouragement to TelexFree to continue its unlawful business model.

345.    Defendant Nehra knew to his providing legal opinions at the request of TelexFree that TelexFree intended to use Nehra prominently as a marketing tool on both their localized Brazilian (Portuguese) and Spanish (Spanish) website portals, in an effort to make TelexFree's illegal Pyramid Ponzi Scheme appear legitimate, continuing and perpetuating the ongoing fraud.

346.    TelexFree used Nehra's false legal opinions as a marketing tool to promote its illegal Pyramid Ponzi scheme on Brazilian (Portuguese) and Spanish/Dominican (Spanish) website portals.

347.    The Defendant Nerha and the other Attorney Defendants know these legal opinions were false, and these false opinion were used by TelexFree to promote and perpetuate TelexFree's illegal Pyramid Ponzi Scheme.

348.    To serve his own selfish and pecuniary interests, Attorney Nehra willfully aided, abetted, counseled, induced, and/or procured TelexFree's violations of law regarding the proper segregation and maintenance of customer funds, and acted in concert and combination with Defendant TelexFree in such violations.

349.    Defendant Nehra gave substantial assistance to TelexFree in accomplishing a tortious and illegal result, and Nehra's own conduct, separately considered, constitutes a breach of duty to Investors since he:

        a.  Knowingly misrepresented the legality and sustainability of TelexFree's operations to the detriment of Investors, and received fees from TelexFree;

b.  Knowingly obscured and obfuscated the illegal nature of TelexFree's scheme by the manipulative use of language, including, e.g., advising TelexFree that using the term "*investment*" must be avoided;

c.  Breached his duty of professional care to investors, by failing to exercise proper due diligence in investigating the legality of TelexFree's operations;

d.  Advised and encouraged Investors to evade United States securities laws to the benefit of TelexFree and detriment of the Investors and the public;

e.  Engaged in a civil conspiracy to defraud TelexFree's investors with a Pyramid Ponzi Scheme, and took a leading role in the scheme;[50]

f.  Attorney Waak, as general partner and Principal Attorney of the Law Offices of Nehra and Waak, knew of, oversaw, and, upon information and belief, participated in Attorney Nehra's tortious and illegal conduct regarding the TelexFree Pyramid Ponzi Scheme; and

g.  Attorney Waak, as general partner and Principal Attorney of the Law Offices of Nehra and Waak, knew of, oversaw, and, upon information and belief, participated in TelexFree Pyramid Ponzi Scheme.

**S.  Telexfree's Certified Public Accountant Aided, Abetted, and Played an Integral Role in the Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme**

350.   As the Chief Financial Officer of TelexFree, Inc. and TelexFree, LLC, Defendant Craft, also known as Joe H. Craft, has been a certified public accountant and served as the Chief Financial Officer ("CFO") of Telex Free, Inc. and TelexFree, LLC.

351.   Defendant Craft is also the sole Member and Manager of Craft Financial, an

---

[50] As stated by Justice William O. Douglas, "just as a fine natural football player needs coaching in the wiles of the sport, so, too, it takes a corporation lawyers with a heart for the game to organize a great stock swindle or income tax dodge and drill the financiers in all the precise details of their play."  William O, Douglas, "*Directors Who Do Not Direct,*" 47 Harv.L.Rev. 1305, 1329 (1934).

Indiana-based limited liability company.

352.   Defendants Craft and Craft Financial are indistinguishable regarding their involvement with the TelexFree Pyramid Ponzi Scheme.

353.   Defendants Craft and Craft Financial knowingly participated in and perpetuated TelexFree's illegal Pyramid Ponzi Scheme.

354.   In his dual capacity as CFO and certified public accountant of TelexFree, Defendants Craft and Craft Financial have been responsible for preparing or approving TelexFree's financial statements, overseeing TelexFree's accounting methods and records, and otherwise exercising significant supervision and control over TelexFree.

355.   On April 23, 2013, in response to a request for a profit-and-loss statement issued by the SOC, TelexFree produced a document purporting to be TelexFree's 2012 profit-and-loss statement.

356.   On February 5, 2014, the SOC requested a second profit-and-loss statement from TelexFree for 2012, which TelexFree produced on February 26, 2014.

357.   A comparison of these two profit-and-loss statements – each purporting to be TelexFree's profit-and-loss statement for 2012 – reveals massive discrepancies.

358.   The first statement provided by TelexFree lists Total Income for 2012 at $1,864,939.70, while the second lists Total Income for 2012 at $2,834,835.70.

359.   As further examples, Agent Commission is listed at $520,582.95 in the first, versus $2,105,925.61 in the second; Total Expenses are listed as $784,899.22 in the first, versus $2,333,893.09 in the second; Net Operating Income is listed as $1,080,040.48 in the first, versus $478,251.56 in the second; and Net Income is listed as $1,066,313.39 in the first, versus $477,652.23 in the second.

360.    The existence of duplicative accounting records containing egregious discrepancies is clear indicia of TelexFree's falsification of accounting records and failure to adhere to GAAP.

361.    As CFO and certified public accountant for TelexFree, Inc. and TelexFree, LLC, and a certified public accountant, Defendants Craft and Craft Financial, knowingly perpetrated the TelexFree fraud by :

  a.    Overseeing TelexFree's creation of falsified accounting records;

  b.    Failing to ensure that GAAP accounting methods were adopted and adhered to;

  c.    Fraudulently certifying TelexFree's business operations and accounting practices as good and lawful, despite actual knowledge of their unlawful and illegitimate nature; and

  d.    Conspiring with TelexFree's Officers to structure and perpetuate an illegal pyramid Ponzi scheme designed to defraud Investors and enrich themselves.

362.    Defendants Craft and Craft Financial disseminated, and otherwise allowed to be disseminated, false and inaccurate financial information among Investors, knowing that such information was false an designed to continue and perpetuate the illegal Pyramid Ponzi Scheme.

363.    Defendants Craft and Craft Financial authorized TelexFree to provide Investors with inaccurate and fraudulent 1099 (Miscellaneous Income) forms, in many cased long after the January 31, 2014 required deadline, and to misrepresent payments made to Investors and conceal assets.

364.    That these inaccurate 1099's are expected to be filed with the Internal Revenue

Service and State Revenue Offices will impose further an undue and massive hardship upon investors.

365. Defendants also prepared false financial documents for affiliated TelexFree entities and prepared false tax returns for the affiliated TelexFree entities.

**T.   Banks and Doe Banks Providers Knowingly Aided and Abetted TelexFree's Unlawful, Unfair, and Deceptive Pyramid Ponzi Scheme and Knowingly Received Fraudulent Fund Transfers**

366. During the TelexFree Pyramid Ponzi Scheme, Defendants Bank of America, Bank of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, GPG, IPS, ProPay, Base Commerce, Vantage Payments, and the Doe Banks and Doe Payment Processors provided crucial financial services to TelexFree, which enabled TelexFree to carry on its unlawful, unfair, and deceptive Pyramid Ponzi scheme.

367. TelexFree's financial services providers, including the aforesaid banking institutions, investment service providers, and payment processing services providers, knowingly aided and abetted TelexFree's Pyramid Ponzi Scheme by :

> a.   Receiving transfers of funds from, and on behalf of, TelexFree in telexfree's fraudulent business, despite knowledge of the fraudulent nature of TelexFree's business enterprise;
>
> b.   Receiving transfers of funds from TelexFree, its affiliated entities, and its executive officers, which transfers deepened TelexFree's insolvency, despite knowing of telexfree's actual or imminent insolvency at the time of such transfers;
>
> c.   Processing payments to, and on behalf of, TelexFree, including its affiliated

entities and Management, in telexfree's fraudulent business, despite

knowledge of the fraudulent nature of TelexFree's business enterprise; and

d.  Otherwise enabling the TelexFree Pyramid Ponzi Scheme to expand and

continue by providing necessary financial services to TelexFree, despite

actual knowledge of fraud by TelexFree.

368.   Defendants Bank of America, Bank of America, N.A., TD Bank, Citizens

Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank,

(sometimes collectively referred to as "Banking Institution Defendants") possessed actual

knowledge of the fraudulent nature of TelexFree's business operation, since at least June 2013.

369.   Despite knowledge of the fraudulent nature of TelexFree's business operations,

the Banking Institution Defendants continued to provide TelexFree with banking services.

370.   Upon information and belief, the Banking Institution Defendants received funds

from Investors, which funds were then held for the benefit of TelexFree, its affiliated entities,

and its Management.[51]

371.   TelexFree's investors were directed by TelexFree, as part of TelexFree's

"*signup procedures*," to transfer investment funds to accounts held by TelexFree at Bank of

America and TD Bank.[52]

372.   Wells Fargo Bank maintained a depository account for TelexFree until March

14, 2014, long after TelexFree's Brazilian operation had been publicly exposed as a Pyramid

---

[51] See, e.g., check deposited by TelexFree into its account with Fidelity Bank, to wit, account number 211370707, attached herewith as Exhibit 14.

[52] See "*Signup procedures for TelexFREE,*" attached herewith as Exhibit 15, also available at http://www.buysellproducts.net/down/sign_up_procedures_for_telexfree.pdf; See also PatrickPretty.com, "*TelexFree Affiliates Gave AdSurfDaily-Like Coaching Tips, Instructed Prospects to Make Deposits at Bank of America[...]TelexFree Also May Have TD Bank Account,*" http://patrickpretty.com/2013/07/08/telexfree-affiliates-gave-adsurfdaily-like-coaching-tips-instructed-prospects-to-make-deposits-at-bank-of-america-and-to-copy-slips-to-team-leaders-gmail-address-for-expedited-service-t/ (July 8, 2013) (including screen shot of TelexFree bank transfer instructions).

Ponzi scheme and shutdown, and after a scam warning against TelexFree had been issued in the United Kingdom.[53]

373.    Defendants Fidelity Investments, Waddell & Reed Financial, Waddell & Reed (sometimes referred to as the "Investment Service Provider Defendants) possessed actual knowledge of the fraudulent nature of TelexFree's business operation, since at least June 2013.

374.    Despite knowledge of the fraudulent nature of TelexFree's business operations, the Investment Service Provider Defendants continued to provide TelexFree and the Officer Defendants with both personal and business investment services.[54]

375.     The Banking Institution Defendants and Investment Service Provider Defendants also received large transfers of funds from TelexFree, its affiliated entities, and its Management, during which TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.[55]

376.    Defendants GPG, IPS, Propay, Base Commerce, Vantage Payments, and the Doe Payment Processors (sometimes collectively referred to as "Payment Processing Services Companies" or "PPSC Defendants") possessed actual knowledge of the fraudulent nature of TelexFree's business operations since at least June 2013.

377.    Despite knowledge of the fraudulent nature of TelexFree's business operations, the PPSC Defendants continued to provide TelexFree with payment processing services.[56]

---

[53] *See* Declaration of Stuart A. MacMillan, Case No. 14-125234-ABL, Doc. 121, par. 12, attached herewith as Exhibit 16.
[54] *See* TelexFree, LLC Balance Sheet as of December 31, 2013, marked as Exhibit 13; see also Declaration of Stuart A. MacMillan, Case No. 14-125234-ABL, Doc. 121, par. 14, attached herewith as Exhibit 16.
[55] *Id.*
[56] *Id.*; *see also* Omnibus Declaration of William H. Runge, Case No. 14-125234-ABL, Doc. 13, par. 61, attached herewith as Exhibit 6.

378.    More particularly, the PPSC Defendants processed payments by Investors to TelexFree in telexfree's fraudulent business operations, which funds were then held for the benefit of TelexFree, its affiliated entities, and its Management.

379.    Upon information and belief, the PPSC Defendants also processed large transfers of funds from TelexFree, its affiliated entities, and its Management, to Banking Institution Defendants and other receivers, during which TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.

380.    The PPSC Defendants received payment of substantial fees in return for providing these services.

381.    More particularly, IPS provided TelexFree with a service titled "e-Wallet," which was used by TelexFree to process electronic transfers of funds by Investors to TelexFree.

382.    According to a TelexFree balance sheet, dated December 31, 2013, posted by the Washington State Utilities and Transportation Commission, as of December 31, 2013, TelexFree claimed $31,640,192.30 in assets then held by IPS (under the brand name "e-Wallet") on behalf of TelexFree.[57]

383.    Defendants GPG, Base Commerce, and Vantage Payments, also processed electronic transfers of funds by Investors to TelexFree.

384.    Defendant ProPay, which also does business as Propay.com, also processed such electronic transfers of funds on behalf of TelexFree.

385.    Upon information and belief, ProPay processed transfers of funds by and on behalf of TelexFree, its affiliated entities, and its Management, during which TelexFree was

---

[57] *See* TelexFree, LLC Balance Sheet as of December 31, 2013, marked as Exhibit 13.

insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations,

deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing

assets.

386.    The Putative Class Representatives seek to obtain damages, restitution and

injunctive relief for the Class, as defined, below, from Defendants.

## V.

## CLASS ACTION ALLEGATIONS

387.    Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs sue on their

own behalf, and on behalf of all other persons similarly situated ("the Class").  The Class that

Plaintiffs seek to represent is:

> All persons located in the United States who tendered funds to
> TelexFree between 1/1/2012 and April 16, 2014 and who did not
> recoup the money they originally invested. Excluded from the
> Class are the Defendants and their officers, directors, and
> employees of Defendant; any entity in which Defendant have a
> controlling interest; the co conspirators, so called insider
> promoters, legal representatives, attorneys, heirs, and assigns of
> the Defendants.

388.    Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a)

because the members of the Class are so numerous that the joiner of all members is impractical.

While the exact number of Class members is unknown to Plaintiffs  based on information and

belief, it is in the hundreds of thousands.

389.    Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a)

because there is a well-defined community of interest among the members of the Class,

common questions of law and fact predominate, Plaintiffs' claims are typical of the members of

the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

390.    This action satisfies the requirements of Federal Rule of Civil Procedure

23(b)(3) because it involves questions of law and fact common to the member of the Class that

predominate or questions affecting only individual members, including, but not limited to:

a.   Whether the contract under which TelexFree claims to invoke the
     application of Nevada law is illegal and unenforceable as a matter of law;

b.   Whether the contract under which TelexFree claims to invoke the
     application of Nevada law is otherwise void and unenforceable as a
     matter of law;

c.   Whether TelexFree ran a Pyramid Ponzi Scheme;

d.   Whether TelexFree ran a lawful Multi-Level Marketing program;

e.   Whether TelexFree offered and sold securities in unregistered
     investment contracts constituting securities;

f.   Whether the other Defendants aided and abetted TelexFree in the sale of
     unregistered securities in violation of the law;

g.   Whether the Defendant Officers, Named Insider Promoters, Doe Inside
     Promoters, Doe Paralegal, Banks and Financial Institutions, Payment
     Processing Services Companies, Retained Licensed Professionals and
     Doe Banks knew that TelexFree was an illegal pyramid-type Ponzi
     scheme which involved the illegal sale of securities, continued to aid,
     abet and further such illegal activities or are otherwise liable for the
     economic loss suffered by the Putative Class;

h.   Whether TelexFree's financial services providers, including the aforesaid
     banking institutions and payment processing services providers,
     knowingly aided and abetted TelexFree's Pyramid Ponzi Scheme;

i.   Whether Massachusetts Blue Sky Laws will apply to the claims of the
     Putative Class;

j.   Whether TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, for the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A;

k.   Whether TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons;

l.   Whether TelexFree mailed fraudulent and inaccurate 1099 (Miscellaneous Income) forms to investors;

m.   Whether the 1099 (Miscellaneous Income) forms should be declared void as a matter of law or otherwise because they were provided long after the mandated January 31, 2014 deadline, and some after the April 15, 2014 filing deadline; and

n.   Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

391.     Plaintiffs' claims are typical of those of other Class members because Plaintiffs were defrauded by the Defendants' scheme to fraudulently offer and sell unregistered securities; Plaintiffs will fairly and accurately represent the interests of the Class.

392.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications regarding individual members of the Class, which would establish incompatible standards of conduct for the Defendants and would lead to repetitive adjudication of common questions of law and fact. Class treatment is superior to any other method for adjudicating the controversy. Plaintiffs know of no difficulty encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

393.     Damages for any individual class member likely can not justify the cost of individual litigation, so that absent class treatment, the Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

394.     Defendants have acted or refused to act on grounds that apply to the class, as alleged above, and certification is proper under Rule 23(b)(2).

## VI.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**VIOLATIONS OF SECTION 10(b) OF THE SECURITIES AND EXCHANGE ACT OF 1934 AND SECURITIES AND EXCHANGE COMMISSION RULE 10B-5**

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Doe Insider Promoters And Others)**

395.     Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

396.     Plaintiffs and the similarly situated members of the class purchased from the

Defendants identical Unregistered Securities.

397.   Rule 10b-5 of the Securities And Exchange Act of 1934 (the "Exchange Act") prohibits the use of any "device, scheme, or artifice to defraud," and creates liability for any misstatement or omission of a material fact, or one that investors would think was important to their decision to buy or sell the stock.

398.   As set forth above, cogent and compelling evidence that the Defendants acted with specific intent and had knowledge of the "wrongness" of the acts or events described above prior to committing them include:

  a. TelexFree's Contract at Section 2.6.5 (m) deceptively mandated that Promoters not to use the term "investment" with respect to the registration costs.[58] Specifically, TelexFree's Contract at Section 2.6.5 (m) provides that the Promoter must not "use terms that distort the real meaning of products or the mechanism and functioning of multilevel marketing, including, without limitation, expressions that convey the idea of instant wealth for nothing in exchange, as well as speaking of registration costs as a 'financial investment.' Similarly, it is expressly prohibited to use the term 'INVESTMENT' at meetings and in promotional materials in general, orally or in writing.

  b. An article appearing on the Nehru and Waak website makes clear the TelexFree revenue stream and business model is illegal. *See,* http://www.mlmatty.com/2012/06/business-volume-its-critical-importance/[59]

---

[58] Co-Defendant and Company Counsel Attorney Gerald P. Nehra, through his affiliated companies (Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC), and under the direct supervision of Co-Defendants Richard W. Waak and Richard W. Waak Attorney at Law, PLLC in consulation and cooperation with the other Direct Participation defendants developed a consensus and jointly adopted this deceitful advice for the purpose of furthering perpetuating Defendants unlawful Pyramid Ponzi Scheme.

[59] "The next distinction, to my mind, is a make or break distinction and a legality versus pyramid test. Does the money the company make, and does the money paid to representatives, flow primarily from business volume and NOT from the mere act of sponsoring another

c.   Sanderley Rodrigues de Vasconcelos ("Rodrigues") one of the most visible TelexFree faces. In 2007 Rodrigues settled charges in 2007 brought by the United States Securities and Exchange Commission (the "SEC") related to his operation of a fraudulent pyramid scheme. Rodrigues was Officer and Director of Universo FoneClub Corporation, another Massachusetts corporation.  As a condition of this settlement he was permanently enjoined from violating Section 10(b) of the Exchange Act and Rule 10b-5, and Sections 5(a), 5(c) and 17(a) of the Securities Act.  He was further disgorged of about $1.8 million in ill-gotten gains.

d.   TelexFree's unregistered securities were uniformly identified to members of the putative class as "memberships."  This representation was intended to deceive and was, in fact, false and deceptive.

e.   On official corporate filings for the State of Nevada, Merrill and Wanzeler list their address as 4705 S. Durango Drive, #100-J1, Las Vegas, Nevada 89147 - a post office box);

399.   During the Class Period, the Defendant TelexFree Companies, Owners, Officers and Directors, Various Businesses Associated With Those Individuals, and Insider Promoters including Insider Promoter Does 1-63, directly and indirectly, by means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a scheme and a continuous course of conduct to make false and misleading material statements about the TelexFree investment dealings, financial condition and operations, and to conceal adverse material

———————————————— (continued)

representative? Ideally, ALL such money flow is triggered by business volume. If ANY money flows to the representative for recruiting another representative WITHOUT a business volume component, the terms "red flag" or "head-hunting fee" are used. In a legal compensation plan, the act of sponsoring alone can never trigger a commission payment. All compensation must be based on business volume, and no compensation can ever flow from the act of sponsoring alone. Even plans that are technically correct in design, but use inappropriate language to suggest the representative is paid for sponsoring, have significant risks. Such an error in design or implementation is a red flag to regulators investigating pyramids. In a legally designed plan, no one-not the company and not any representative-makes money, unless business volume is generated by products and services being purchased by consumers."

information about these investments in a uniform and systemwide way including but not limited to its standard contract.

400.   Individually and by use of the advise or counsel of the Defendant attornies and certified public accountant defendants the Defendants knowingly omitted material facts designed and intended to manipulate or deceive Plaintiffs and similarly situated members of the class.

401.   Defendants knowingly misrepresented material facts  designed and intended to manipulated or deceived Plaintiffs and similarly situated members of the class through systemic employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and courses of conduct, as alleged, including: (1) making or participating in making untrue statements of material facts; (2) omitting material facts that would have made the statements about the investments not misleading; and (3) engaging in transactions, practices, and a course of business which operated fraudulently and deceitfully upon investors during the Class Period.

402.   Each Defendant offered and sold securities with fraudulent misrepresentations and intentional omissions of material facts concerning the securities.

403.   Defendants knew of the misrepresentations and omissions of material facts set forth, or acted with reckless disregard for the truth because they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing the true information about the investments, specifically their financial condition and operations.

404.   Defendants received information reflecting the facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading statements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.  Their control and/or association with the investment, made Defendants active and culpable participants in the

fraudulent scheme.

405.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information they caused and allowed to be disseminated to Investors and potential investors.

406.    The ongoing fraudulent, unfair, and deceptive Pyramid Ponzi Scheme could not have been perpetrated over a substantial period without the knowledge and complicity of stated Defendants.

407.    Because of the enabled dissemination of materially false and misleading information and failure to disclose material facts, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

408.    In ignorance of the materially false and misleading nature of the reports and statements described above, Plaintiffs and the other Class members relied, to their detriment, on Defendants for complete and accurate information about these investments.

409.    As a result of the aforesaid unlawful conduct, Plaintfss and the similarly situated class members suffered ascertainable damages.

410.    As a result of the aforesaid unlawful conduct, Plaintffs and the similarly situated class members they seek to represent suffered ascertainable damages.

411.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF SECTION 20(A) OF THE SECURITIES AND EXCHANGE ACT 1934 AND SECTION 15 OF THE SECURITIES ACT OF 1933

**(Against Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC)**

412.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as

though fully set forth here.

413.    Section (20)(a) of the Exchange Act imposes joint and several liability on persons who, directly or indirectly, control a person liable for a securities fraud violation by showing (1) the controlled company or person violated Federal Securities law and (2) the control of the primary violator by the defendant/s.

414.    Control is shown by active participation in the decision making process of the fraudulent company or persons. It must be shown that defendants not only had the power to exercise control, but also did exercise control.

415.    Although scienter is a requirement of the 10(b) claim against the controlled parties, the First Circuit has not made scienter a requirement for a 20(a) claim against a controlling party. [60]

416.    As detailed in the First Claim for Relief, there is an original 10(b) violation by defendants Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Doe Insider Promoters And Others.

417.    At the time of the wrongs alleged, Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, not only had the power to control the companies and persons involved with the 10(b) fraud, but also exercised control of the companies and persons.

418.    By their respective positions of authority as officers within the TelexFree companies, defendants Merill, Wanzeler, Labriola, and Costa not only had the power and authority to influence and control TelexFree but also did influence and control TelexFree by being paramount in its decision making and its dissemination of false and misleading information as to the illegitimate scheme being perpetrated.

419.    Attorney defendants also had the power to control all companies and persons in

---

[60] See *In re Stone & Webster, Inc., Securities Litigation*, 414 F.3d 187 at note 4 (Ct. App. 1st Cir. 2005)

violation of 10(b) by way of being there legal counsel and by way of having extensive experience in MLM enterprises. Further, defendant Attorneys did exercise their control by counseling TelexFree on methods of evading U.S. securities laws exemplified by instructing investors to avoid using the term "investment." Defendant attorney's further exercised control by providing false legal opinions to further the illegal Pyramid Ponzi Scheme and admitting that TelexFree had been "vetted by the Nehra and Waak Law firm"

420.    Defendant Craft also had the power to control, and exercised that power. He had power by way of being TelexFree's CPA and exercised that power by preparing falsified financial documents for TelexFree in order to perpetuate their Pyramid Ponzi Scheme. Further, Craft provided inaccurate 1099 statements and inaccurate tax returns.

421.    The stated Defendants also materially aided, with active promotion, in the sale of TelexFree AdCentral packages -- all of which constitute securities.

422.    By their positions as controlling persons, and because of the aforementioned controlling conduct, Defendants violated Section 20(a) of the Exchange Act.

423.    As a result of the aforesaid unlawful conduct, Plaintfss and the similarly situated class members suffered ascertainable damages.

424.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

### THIRD CLAIM FOR RELIEF

### VIOLATIONS OF SECTIONS 5 AND 12(A)(L) OF THE SECURITIES ACT OF 1933

### (Against Defendants Merrill, Wanzeler, Labriola, Craft, Costa And Others)

425.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

426.    The Securities Act of 1933 (the "Securities Act") prohibits the sale and delivery after sale of any unregistered security. Defendants sold or delivered, after sale, unregistered

securities.

427.    TelexFree's packages were unregistered securities because they were not accompanied by a registration statement.

428.    Moreover, all packages the Defendants sold and issued did not have

(1) the entity's properties and business;
(2) a full description of the offered security;
(3) information about the management of the entity; and
(4) a financial statement certified by an independent auditor

429.    Defendant TelexFree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others failed to file a true Registration Statement for TelexFree pursuant the Securities Act, therefore making it an unregistered security.

430.    By omitting this information, Defendants filed a false Form D.

431.    These stated Defendants also did not apply for or receive an exemption under Regulation D.

432.    Plaintiffs and the Putative Class would not have purchased the securities if these Defendants provided the information required in a Registration Statement.

433.    By the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10 b-5 promulgated there under, and Plaintiffs and the Putative Class have been damaged, in an amount to be proven.

434.    PlaintfFs and the similarly situated class members suffered ascertainable damages demand recission.

435.    As a result of the aforesaid unlawful conduct violative of Sections 5 and 12(a)(1) of the Securities Act, Plaintfss and the similarly situated class members suffered ascertainable damages.

436.    By the foregoing, Plaintiffs and the Putative Class have been damaged and are entitled to damages, including rescission, and other relief for violations by Defendant TelexFree Entities, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others of Sections 5 and 12(a)(1) of the Securities Act.

437.     As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## FOURTH CLAIM FOR RELIEF

## VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT OF 1933

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC)**

438.     Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

439.     During the Class Period, Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Richard W. Waak, Attorney at Law, PLLC and Gerald P. Nehra, Attorney at Law, PLLC, fraudulently failed to convey facts material to the TelexFree AdCentral investment packages by failing to produce and file a Registration Statement.

440.     Defendants intentionally avoided the requirement to produce a Registration Statement, and intentionally avoided disclosing that the AdCentral packages were investments, and that financial returns on the AdCentral investments were derived from the proceeds received from the purchase of such investments, and not from the sale of the VoIP product.

441.     Defendants knew of the misrepresentations and omissions of material facts the omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operation.

442.     Defendants received information reflecting the facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

443.     Due to their control and/or association with the investment, Defendants were

active and culpable participants in the fraudulent scheme.

444.   Defendants knew, and recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated to Investors.

445.   The ongoing fraudulent scheme described could not have been perpetrated over a substantial period without the knowledge and complicity of these Defendants.

446.   Because of failure to disclose material facts, including their failure to file the requisite registration material, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

447.   By the foregoing, said Defendants have violated Section 11 of the Securities Act, and Plaintiffs and the Putative Class have been damaged, in an amount to be proven.

448.   As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## FIFTH CLAIM FOR RELIEF

## VIOLATIONS OF SECTION 12(A)(2) OF THE SECURITIES ACT OF 1933

### (Against Defendants Merrill, Wanzeler, Labriola, Craft, Costa And Others)

449.   Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

450.   Defendants Merrill, Wanzeler, Labriola, Craft, Costa and others participated in the sale of securities to Plaintiffs that were unregistered and not exempt from registration.

451.   At the time of their investments, Plaintiffs and the Putative Class had no knowledge that the investments offered by these Defendants were subject to registration requirements.

452.   Said Defendants knew or reasonably should have known that the TelexFree Agreement Contract and investment scheme was subject to the registration requirement of the Securities Act.

453. Both the Telex Contract and related materials distributed to Plaintiffs and the Putative Class and the oral communications with Plaintiffs and the Putative Class by Defendants contained material omissions and misstatements.

454. Plaintiffs and the Putative Class did not know of the falsity of these statements or of the material omissions in the written materials including, but not limited to, Accounting Statements prepared by the Accounting Defendants and other misrepresentations made by Defendant TelexFree Entities, Merrill, Wanzeler, Labriola, Craft, Costa and others as described above. Plaintiffs reasonably believed such statements were true.

455. These stated Defendants knew, or in exercising reasonable diligence, should have known, of the falsehoods and omissions.

456. Plaintiffs and the Putative Class would not have purchased the securities if they had this knowledge.

457. Because of these investments, Plaintiffs and the Putative Class have been damaged.

458. Plaintiffs and the Putative Class are entitled to recission of their purchases and may recover the value of their interest in TelexFree. Plaintiffs and the Putative Class seek rescission of their purchase of membership interests in TelexFree.

459. As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

**SIXTH CLAIM FOR RELIEF**

**VIOLATIONS OF MASSACHUSETTS GENERAL LAWS,
CHAPTER 110a, SECTION 410(A)**

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, And The Doe Insider Promoters)**

460. Plaintiffs incorporate by reference all allegations in all previous paragraphs, as

though fully set forth here.

461.    TelexFree unlawfully sold unregistered securities in twenty-one states and internationally from its offices in Marlborough, Massachusetts.[61]

462.    During the Class Period, Defendants Merrill, Wanzeler, Labriola, Craft, Costa, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan and the Doe Insider Promoters offered and sold securities to Plaintiffs with a scheme and a continuous course of conduct to make materially false and misleading statements about the TelexFree investment dealings, financial condition and operations and to conceal adverse material information about these investments.

463.    Said Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and courses of conduct, as alleged, including : (1) making or participating in making untrue statements of material facts; (2) omitting to state the material facts that would have made the statements about the investments not misleading; and (3) engaging in transactions, practices, and a course of business which operated as a fraud and deceit upon investors during the Class Period.

464.    Each of said Defendants offered and sold securities with fraudulent misrepresentations and intentional omissions of material facts concerning the securities.

465.    Said Defendants knew of the misrepresentations and omissions of material facts set forth, or acted with reckless disregard for the truth because they failed to ascertain and to disclose such facts, even though such facts were readily available to them.  Such misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

466.    Said Defendants received information reflecting the facts regarding the

---

[61] Since all sales were processed through their Massachusetts office, Massachusetts state law applies including MGL 110A, Sec. 410, MGL. 110A, Sec. 410(b) and MGL 93A.

investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

467.    Due to their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

468.    Said Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated to Investors.

469.    The ongoing fraudulent scheme described could not have been perpetrated over a substantial period without the knowledge and complicity of the said Defendants.

470.    Because of the dissemination of materially false and misleading information and failing to disclose material facts, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

471.    In ignorance of the materially false and misleading nature of the reports and statements described above, Plaintiffs and the other Class members relied, to their detriment, on Defendants for complete and accurate information about these investments.

472.    By the foregoing, said Defendants have violated Section 410(a) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, and Plaintiffs and the Putative Class have been damaged.

473.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

### SEVENTH CLAIM FOR RELIEF

### VIOLATIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 110a, SECTION 410(b)

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Law Offices Of Nehra And Waak, Richard W. Waak, Attorney At Law, PLLC And Gerald P. Nehra, Attorney At Law, PLLC And Others)**

474.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as

though fully set forth here.

475.    At the time of the wrongs alleged, Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Richard W. Waak, Attorney at Law, PLLC, Gerald P. Nehra, Attorney at Law, PLLC and others were each a controlling person, partner, officer, director, person occupying a similar status, or employee materially aiding in the sale of securities, of TelexFree within the meaning of Section 410(b) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A.

476.    By their respective positions of authority, these Defendants had the power and authority to influence and control, and influenced and control, the decision-making and activities of TelexFree and the affiliated TelexFree entities and caused them to engage in the wrongful conduct described.

477.    The stated Defendants actively participated in the leadership and decision-making process of the selling entity causing the dissemination of false and misleading statements and omissions of material facts.

478.    By their positions as controlling person and top-level promoters, and because of the aforementioned conduct, Defendants are liable under Section 20(a) of the Exchange Act.

479.    The stated Defendants are liable under 410(b) as a primary violation was under 410(a), Defendants materially aided in the sale of unregistered securities, and knew, or by reasonable diligence should have known, of the primary violation.

480.    Plaintiffs and the Putative Class seek the award of actual damages on behalf of the Class.

481.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## EIGHTH CLAIM FOR RELIEF

## NEGLIGENCE

### (Against All Defendants)

482.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

483.    Defendants owed a duty to Plaintiffs and the Putative Class to act with a level of care to avoid misstating TelexFree's financial information or its returns; and to comply with all laws concerning TelexFree, including, without limitation, federal and state securities laws.

484.    By misstating and omitting relevant financial information, including the returns to Promoter/Investors, TelexFree breached its duty of care owed to Plaintiffs and the Putative Class .

485.    As a direct and proximate result of Defendants' negligence and carelessness, Plaintiffs and the Putative Class have been caused to suffer and sustain damages and losses.

## NINTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

**(Against Defendants Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Law Offices Of Nehra And Waak, Richard W. Waak, Attorney At Law, PLLC And Gerald P. Nehra, Attorney At Law, PLLC, Rodrigues, De La Rosa, Crosby, And Sloan)**

486.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

487.    The stated Defendants directly, and through their agents, servants, employees and/or representatives, negligently made misrepresentations of material fact to Plaintiffs and the Putative Class with the misrepresentations being made to obtain and/or wrongfully appropriating and converting money from Plaintiffs and the Putative Class.

488.    Said Defendants made negligent representations although Defendants knew, or should have known, that such representations were false.

489.    Said representations and statements were material and were relied upon by Plaintiffs, inducing them to furnish money to Defendants.

490.    In consequence of the reliance on the negligent misrepresentations, Plaintiffs and the Putative Class have suffered great financial losses, have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

491.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

### TENTH CLAIM FOR RELIEF

### INTENTIONAL MISREPRESENTATION

**(Against Defendants Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Law Offices Of Nehra Richard W. Waak, Attorney At Law, PLLC And Waak, Gerald P. Nehra, Attorney At Law, PLLC, Rodrigues, De La Rosa, Crosby, And Sloan, Doe Insider Promoters And Others)**

492.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

493.    The stated Defendants directly, and through their agents, servants, employees and/or representatives, did intentionally make false representations of material fact to Plaintiffs and the Putative Class with reckless disregard for the truth. **Each defendant at the time knew the representation was false, or asserted that the representation was true without knowledge of its truthness.** Defendants made these misrepresentations to obtain and/or wrongfully appropriating and converting money from Plaintiffs and the Putative Class.

494.    Defendants made these intentional misrepresentations although Defendants knew that such representations were false.

495.    These misrepresentations and statements were material and were relied upon by

Plaintiffs, inducing them to furnish money to Defendants.

496.    In consequence of the reliance on the intentional misrepresentations, Plaintiffs and the Putative Class have suffered great financial losses, and have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

497.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

### ELEVENTH CLAIM FOR RELIEF

### PROFESSIONAL MALPRACTICE

**(Against Defendants Craft, Craft Financial, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC)**

498.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

499.    Defendants Craft, Craft Financial, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC were the providers of professional accounting and legal services.

500.    Said Defendants had a duty to perform these services in conformance with the skill and knowledge normally possessed by members of the accounting and legal professions, using the good, known, and accepted customs and practices of the fields. As to each defendant attorney and entity:

  a.  each defendant failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession;

  b.  the negligence was a proximate cause of the loss sustained by the plaintiff;

  c.  the Plaintiffs and each member of the Putative Class incurred ascertainable actual damages as a result of each Defendant Attorney's actions or inactions; and

  d.  "but for" the Attorney's negligence the Plaintiffs and each member of the Putative Class would not have sustained damages.

501.  As to each defendant Accountant and entity:

    a.  the Accountant had a duty of care to the Plaintiffs and each member of the Putative Class;

    b.  the accountant was negligent in carrying out that duty;

    c.  the Plaintiffs and each member of the Putative Class incurred ascertainable actual damages as a result of each Defendant Accountant's  actions or inactions; and

    d.  Each Accountant negligently failed to ensure that TelexFree maintained proper accounting records.

502.  The stated Defendants breached their duty to Plaintiffs and the Putative Class by negligently certifying and representing to Plaintiffs and the public that the business model and operations of TelexFree were legal, proper, and economically viable and sustainable, when TelexFree's business model and operations constituted an unlawful, unfair, deceptive and unsustainable Ponzi scheme.

503.  Further, the stated Defendants failed to exercise proper due diligence in the discharge of their investigatory duties as certified public accountants and attorneys of TelexFree.

504.  Because of the professional negligence of Defendants, Plaintiffs, the Putative Class and the public were misled to believe that TelexFree were legal, proper, and economically viable and sustainable – when it was not.

505.  As a direct and proximate consequence of the aforementioned negligence of said Defendants, Plaintiffs and the Putative Class sustained injuries and losses.

504.  As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## TWELFTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC)**

505.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

506.    Defendants Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC and others owe to Plaintiffs and the Putative Class a duty of utmost good faith and fair dealing. They breached that duty and each personal benifited.

507.    Said Defendants violated their duty by actively misrepresenting and fraudulently failing to convey facts material to the TelexFree AdCentral investment packages, including:

       a.    providing false and misleading information on the nature of TelexFree's business operation;

       b.    misrepresenting the financial statements;

       c.    providing false and misleading information on the value of the AdCentral Package;

       d.    providing false and misleading information on the method and source from which income was derived;

       e.    providing false and misleading information on the legality of TelexFree's business model;

       f.    providing false and misleading information on the sustainability of the returns to Promoter/Investors;

       g.    providing false and misleading information regarding the investigation in Brazil and subsequent closure of TelexFree's Brazilian operations,

       h.    knowingly participating in false and deceptive information televised over the internet and other media;

       i.    concealing that the AdCentral Packages were securities and were unregistered;

j.      failing to comply with federal and state securities laws; and

k.      employing legal and accountant counsel to mask their illegal and fraudulent activities to further and perpetuate such illegal fraudulent activities.

508.    Said Defendants knew of the fraudulent and deceptive misrepresentations and omissions of material facts set forth.

509.    Such misrepresentations and omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

510.    Said Defendants received information reflecting the facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

511.    Because of their control and/or association with the investment, the stated Defendants were active and culpable participants in the fraudulent scheme.

512.    Said Defendants knew and recklessly disregarded the false and misleading nature of the information they caused to be disseminated to Investors.

513.    Stated Defendants, through the aforesaid fraudulent and deceptive misrepresentations and omissions of material facts, breached their fiduciary duties of care and loyalty to Plaintiffs and the Putative Class.

514.    Because of the foregoing breach of fiduciary duty by Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

515.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained injuries and losses.

## THIRTEENTH CLAIM FOR RELIEF

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**Against Defendants Merill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC And Others**

516.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

517.    Defendants owed to Plaintiffs and the Putative Class a duty of utmost good faith and fair dealing, had to consider the welfare of Plaintiffs and the Putative Class and not act for purely selfish motives or private gain. They breached that duty and each personal benifited

518.    Defendants violated their duty by actively misrepresenting and fraudulently failing to convey facts material to the TelexFree AdCentral investment packages, including:

a.    providing false and misleading information on the nature of TelexFree's business operation;

b.    misrepresenting the financial statements;

c.    providing false and misleading information on the value of the AdCentral Package;

d.    providing false and misleading information on the method and source from which income was derived;

a.    providing false and misleading information on the legality of TelexFree's business model;

b.    providing false and misleading information on the sustainability of the returns to Promoter/Investors;

c.    providing false and misleading information regarding the investigation in Brazil and subsequent closure of TelexFree's Brazilian operations,

d.    knowingly participating in false and deceptive information televised over the internet and other media;

e.    concealing that the AdCentral Packages were securities;

j.    failing to comply with federal and state securities laws; and

k.    employing legal and accountant counsel to mask their illegal and fraudulent activities to further and perpetuate such illegal fraudulent activities.

519. Said Defendants knew of the fraudulent and deceptive misrepresentations and omissions of material facts set forth.

520. Such misrepresentations and/or omissions were made knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

521. Said Defendants received information reflecting the facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

522. Due to their control and/or association with the investment, the stated Defendants were active and culpable participants in the fraudulent scheme.

523. Said Defendants knew and recklessly disregarded the falsity and misleading nature of the information they caused to be disseminated to Investors.

524. The stated Defendants, through the aforesaid fraudulent and deceptive misrepresentations and omissions of material facts, breached their covenant of good faith and fair dealing owed to the Plaintiffs and the Putative Class.

525. Because of this described breach of the covenant of good faith and fair dealing by the stated Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

526. As a direct and proximate consequence of the aforementioned breach of the covenant of good faith and fair dealing of said Defendants, Plaintiffs and the Putative Class sustained injuries and losses.

527. As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## FOURTEENTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Rodrigues, WWWGlobal Business, Inc., De La Rosa Crosby, Sloan, Doe Insider Promoters And Others)**

528.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as as though fully set forth here.

529.    Plaintiffs and the Putative Class furnished funds, directly or indirectly, to the stated Defendants, who accepted them without protest or defect and unjustly retained and benefitted from them .

530.    Said Defendants have knowingly and unlawfully and in bad faith denied Plaintiffs and the Putative Class access to such funds, and have instead retained the benefit of such funds for themselves.

531.    As a direct and proximate result of said Defendants, as hereinabove set forth, said Defendants are, and continue to be, unjustly enriched.

532.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## FIFTEENTH CLAIM FOR RELIEF

## FRAUD

**(Against Defendants Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan And Others)**

533.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

534.     Defendants TelexFree, Merrill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan and others deliberately practiced deception in order to secure unfair or unlawful gain. Including  but not limited to repeatedly misrepresenting and intentionally omitting material facts material conveyed to Plaintiffs and the Putative Class including the TelexFree AdCentral investment packages.

535.     Each Defendant made a false statement of a material fact despite advance knowledge on thier part that the statement is material statements were untrue.

536.     Each Defendant had intent at the time of the false statements of material fact to deceive the Plaintiffs and members of the putative classes.

537.     Plaintiffs and members of the putative classes justifiable relied on the false statements of material fact.

538.      Plaintiffs and members of the putative classes suffered similar ascertainable economic loss.

539.     Defendants' fraudulent misrepresentations and omissions include :

    a.   providing false and misleading information on the nature of TelexFree's business operation;

    b.   misrepresenting the financial statements;

    c.   providing false and misleading information on the value of the AdCentral Package;

    d.   providing false and misleading information on the method and source from which income was derived;

    e.   providing false and misleading information on the legality of TelexFree's business model;

    f.   providing false and misleading information on the sustainability of the returns to Promoter/Investors;

g.  providing false and misleading information regarding the investigation in Brazil and subsequent closure of TelexFree's Brazilian operations,

h.  knowingly participating in false and deceptive information televised over the internet and other media;

i.  concealing that the AdCentral Packages were securities;

j.  failing to comply with federal and state securities laws; and

k.  employing legal and accountant counsel to mask their illegal and fraudulent activities to further and perpetuate such illegal fraudulent activities.

540.    Defendants knew of the fraudulent and deceptive misrepresentations and omissions of material facts set forth.

541.    These and other uniform systemic misrepresentations and omissions were knowingly made for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

542.    Defendants received information reflecting the facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading statements and/or their association with the investment, and made them privy to confidential proprietary information concerning these investments.

543.    Due to their control and/or association with the investment, the stated Defendants were active and culpable participants in the fraudulent scheme.

544.    Defendants knew and recklessly disregarded the false and misleading nature of the information they caused to be disseminated to Investors.

545.    The ongoing fraudulent scheme described could not have been perpetrated over a substantial period without the knowledge and complicity of the said Defendants.

546.    Plaintiffs and the Putative Class relied upon such fraudulent statements and omissions.

547.    Because of the foregoing fraud perpetrated by the stated Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

548.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

### SIXTEENTH CLAIM FOR RELIEF

### AIDING AND ABETTING FRAUD

**(Against Defendants Telexelectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC, Richard W. Waak, Attorney At Law, PLLC, Bank Of America, Bank Of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, Gpg, Ips, Propay, Base Commerce, Vantage Payments And The Doe Defendants)**

549.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

550.    There were an original fraudulent acts carried out by TelexFree and

    a.   each defendant provided 'substantial assistance or encouragement to the fraudulent party. As described herein, the substantial assistance provided by each was not "little aid" but was assistance that made it easier for the primary fraudulent violation.  Each Defendant encouraged, incitated to action or instigated with foreseeable consequence; and

    b.   each defendant had unlawful intent, i.e., knowledge that the other party  is breaching a duty/committing fraud and the intent to assist that party's actions or was general aware as esablished from the circumstances detailed herein. Further, as to those defendnats that claim they were not aware, each such defendant had a duty to inquire and breached that duty and so - knowledge is inferred.

551.    These stated Defendants provided substantial assistance or encouragement to the fraudulent parties, and did so with unlawful intent by way of knowing the fraudulent parties were selling unregistered securities yet continuing to substantially assist or encourage.

552.    Defendants rendered this substantial assistance despite their knowledge that TelexFree's operations constituted an unlawful, unfair, deceptive and unsustainable Pyramid Ponzi Scheme and financial fraud.

553.    Such substantial assistance rendered by Defendants despite their knowledge of, or with reasonable diligence should have known, the fraudulent nature of TelexFree's operations, include, but are not limited to :

    a.  managing and controlling TelexFree and its affiliated entities;

    b.  providing accounting services to TelexFree;

    c.  providing legal services to TelexFree;

    d.  publicly certifying that TelexFree's business model and operations were legal, proper, and economically viable and sustainable;

    e.  providing banking, investment and asset management services for TelexFree and its management;

    f.  promoting TelexFree AdCentral packages;

    g.  continuing to provide financial services following the Brazilian Court's injunction to stop TelexFree's business in Brazil;

    h.  processing payments to, from, and on behalf of TelexFree and its affiliated entities; and

    i.  processing payments for transfers of funds which deepened TelexFree's insolvency.

554.     Plaintiffs and the Putative Class relied upon such fraudulent statements and omissions.

555.     As a direct and proximate result of TelexFree's fraud, to which the stated Defendants provided substantial assistance, Plaintiffs and the Putative Class sustained ascertainable  economic loss.

### SEVENTEENTH CLAIM FOR RELIEF

### COMMON LAW FRAUDULENT TRANSFER

**(Against Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Fidelity Bank, And Others)**

556.     Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

557.     Plaintiffs and the Putative Class were and are creditors of TelexFree Entities.

558.     Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Fidelity Bank, and Others have knowingly made or accepted transfers of funds owed to Plaintiffs and the Putative Class.

559.     Such transfers were made or accepted with intent to hinder, delay, and/or defraud Plaintiffs.Each defendant made a transfer or incurred an obligation with an intent to hinder, delay, or defraud any creditors of the debtor and without receiving a reasonable equivalent value in exchange for the transfer or obligation

560.     More particularly, such transfers were made to dissipate, convert and conceal funds lawfully due to Plaintiffs and the Putative Class.

561.     Because of such fraudulent transfers, Plaintiffs and the Putative Class sustained ascertainable  economic loss.

562.     As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## EIGHTEENTH CLAIM FOR RELIEF

### DEEPENING INSOLVENCY

**(Against Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Bank Of America, Bank Of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, Gpg, Ips, Propay, Base Commerce, Vantage Payments, Doe Banks, Doe Payment Processors, Paralegal Doe And Others)**

563.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

564.    Plaintiffs and the Putative Class were and are creditors of Defendant TelexFree. Each  defendant knowingly made or accepted transfer of funds owed to plaintiffs which in effect deepended insolvency and these transfers were made to conceal or dissipate funds lawfully due plaintiffs.

565.    Defendant TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Bank of America, Bank of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, GPG, IPS, ProPay, Base Commerce, Vantage Payments, Doe Banks, Doe Payment Processors, Paralegal Doe and others have knowingly made or accepted transfers of funds owed to Plaintiffs and the Putative Class, which transfers deepened TelexFree's insolvency.

566.    Such transfers were made to dissipate, convert and conceal funds lawfully due to Plaintiffs and the Putative Class.

567.    Such transfers have greatly decreased the probable extent of recovery by Plaintiff creditors and the Putative Class.

568.    Because of the aforestated conduct, Plaintiffs and the Putative Class sustained

ascertainable economic loss.

569.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## NINETEENTH CLAIM FOR RELIEF

## CIVIL CONSPIRACY

**(Against Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merrill, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC And Richard W. Waak, Attorney At Law, PLLC, Doe Insider Promoters And Others)**

570.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

571.    As referenced herein Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, John Merril, Costa, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan,  Nehra, Waak, Law Offices of Nehra And Waak, Gerald P. Nehra, Attorney at Law, PLLC, Richard W. Waak, Attorney at Law, PLLC, Doe Insider Promoters, and others have combined to enter into agreements to commit wrongful acts.

572.    Each defendant participated in this civil conspiracy, for an unlawful purpose and using unlawful means, with the intent of so combining to unlawfully defraud Plaintiffs and the Putative Class out of funds.

573.    As a consequence of the Defendants civil conspiracy, Plaintiffs and the Putative Class sustained ascertainable  economic loss.

574.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## TWENTIETH CLAIM FOR RELIEF

## CONVERSION

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan, Doe Insider Promoters And Others)**

575.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

576.    DefendantsTelex Electric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan, Doe Insider Promoters and others have unlawfully converted Plaintiffs' funds, by obtaining the same through knowing misrepresentations made to Plaintiffs, the Putative Class and the public.

577.    Said Defendants continue to retain funds unlawfully converted from Plaintiffs. Plaintiffs and the Putative Class had clear legal ownership or right to possession of thier money at the time of each conversion. Defendant's uniformly converted those funds by a uniform system wide protocol which consisted of wrongful acts and the wrongful disposition of property rights.

578.    In consequence of the foregoing, Plaintiffs and the Putative Class sustained ascertainable  economic loss.

579.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## TWENTY-FIRST CLAIM FOR RELIEF

## VIOLATIONS OF MASSACHUSETTS GENERAL LAWS,
## CHAPTER 93A

**(Against Defendants TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Nehra, Waak, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC, Richard W. Waak, Attorney At Law, PLLC, Bank Of America, Bank Of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, Gpg, Ips, Propay, Base Commerce, Vantage Payments And the Doe Defendants)**

580.     Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

581.     Stated Defendants were engaged in Trade and Commerce as defined by Massachusetts General Laws Chapter 93A.

582.     Plaintiffs and the Putative Class were engaged in Trade and Commerce as defined by Massachusetts General Laws Chapter 93A, Section 1.

583.     The foregoing transactions, actions and inactions of the said Defendants constitute unfair and deceptive acts and practices as defined by, and in violation of, Massachusetts General Laws, Chapter 93A.

584.     Plaintiffs and the Putative Class sustained ascertainable  economic loss.

585.     As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## TWENTY-SECOND CLAIM FOR RELIEF

## VIOLATIONS OF THE LANHAM ACT, UNITED STATES CODE, TITLE 15, SECTION 1125

**(Against Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Rodrigues, WWW Global Business, Inc., De La Rosa, Crosby, Sloan, Costa, Waak, Nehra, Law Offices Of Nehra And Waak, Gerald P. Nehra, Attorney At Law, PLLC , Richard W. Waak, Attorney At Law, PLLC, And Doe Insider Promoters)**

586.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

587.    As set forth more particularly throughout this Complaint, and in direct violation of the Lanham Act, 15 U.S.C. § 1125, Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Rodrigues, WWW Global Business, De La Rosa, Crosby, Sloan, Costa, Waak, Nehra, Law Offices of Nehra And Waak, Gerald P. Nehra, Attorney at Law, PLLC, Richard W. Waak, Attorney at Law, PLLC and Doe Insider Promoters have used false or misleading descriptions of material fact, and false and/or misleading representation of material fact, in promoting and selling TelexFree's AdCentral investment packages and VoIP products.

588.    Each Defendant, in connection with goods or services, used in commerce words, terms, names, symbols, or devices, individually and in combination that were false designations of origin, false or misleading descriptions of fact, and false or misleading representation of fact (Falsities"). Moreover, these Falsities were likely to cause confusion or mistake as to affiliation with another person or group, or as to the origin of the goods, services, or commercial activities. The falsities ; or misrepresented the nature, characteristics, qualities, or origin of TelexFree's goods, services, and commerical activities.

589.    Said Defendants have also used false and/or misleading descriptions of material fact, and false or misleading representations of material fact, in characterizing TelexFree's business operations, returns on investment, and the legality of the investments.

590.    Defendants' false and/or misleading descriptions of material fact, and false or misleading representations of material fact, did deceive, or have the tendency to deceive, both

Plaintiffs, the Putative Class and the public.

591.    As direct and proximate result of the false and misleading advertisements disseminated by the Defendants, Investors paid artificially inflated prices for thier investment during the Class Period.

593.    As a direct and proximate consequence of the aforementioned breach of fiduciary duty of said Defendants, Plaintiffs and the Putative Class sustained ascertainable economic loss.

## VII.

## CONCLUSION

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment:

1.    Declaring this action to be a Class Action properly maintained under the Federal Rules of Civil Procedure and certifying Plaintiffs as the class representatives;

2.    Awarding Plaintiffs and Class Members rescission and/or compensatory damages against Defendants for all damages sustained because of their wrongdoing, in an amount to be proven including interest;

3.    Awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

4.    Awarding punitive damages;

5.    Awarding costs of suit and attorneys' fees, as allowable by law;

6.    Awarding interest;

7.    Appointing a receiver selected by Class Counsel and an accounting; and

8.    Awarding Plaintiffs and the Class of such other and further relief as may be just and proper under the circumstances including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Putative Class demand a jury trial of their claims to the extent authorized by law.

Respectfully submitted,

Dated this 30th day of June, 2014.

/s/ Robert J. Bonsignore
Robert J. Bonsignore, Esq.
BBO #547880
BONSIGNORE, LLC
193 Plummer Hill Road
Belmont, NH  03220
Telephone:  781-856-7650
rbonsignore@classactions.us

*Attorneys for REVEREND JEREMIAH GITHERE, JOSEPH SHIKHMAN, AND CHRISTOPHER MCCORMICK – putative class representatives and those similarly situated*